18392

Harold JOHNSON, Respondent, v. Claude S. FINNEY, Claude S.
Finney, Jr., and Dickerson, Inc., of which Claude S. Finney and
Claude S. Finney, Jr., are, Appellants.

(143 S. E. (2d) 722)

*Messrs. Smith & Moore* and *Arthur M. Flowers, Jr.,* of Georgetown, *for Appellants,*

*Messrs. Patrick J. Doyle* and *Cecil W. Schneider,* of Georgetown, *for Respondent,*

*Messrs. Smith & Moore* and *Arthur M. Flowers, Jr.,* of Georgetown, *for Appellants, in Reply,*

August 19, 1965.

Moss, Justice.

Harold Johnson, the respondent herein, brought this action against Claude S. Finney, Claude S. Finney, Jr.,

the appellants herein, and Dickerson, Inc., to recover damages for personal injuries sustained when he was struck by an automobile while walking along the western side of U. S. Highway No. 17 at a point on said highway about 9/10 of a mile north of the northern entrance to Pawleys Island. The automobile which struck Johnson was owned by Claude S. Finney and was being operated at the time by his son, Claude S. Finney, Jr., it being asserted he was, under the family purpose doctrine, an agent of his father.

It is alleged in the complaint that on August 5, 1961, at about 1:00 A. M., the respondent, while walking in a southerly direction, which was thereafter amended to allege that he was walking in a northerly direction, on the western side of U. S. Highway No. 17, was injured when struck by an automobile driven by Claude S. Finney, Jr. It is then alleged that the respondent's injuries were caused by and resulted from the joint and concurrent negligent, careless, reckless, willful and wanton acts of the appellants, and Dickerson, Inc., who was then performing certain construction and repairs to the said highway.

The appellants, by their answer, set forth (a) a general denial, (b) that the injuries to the respondent were due to and caused by either his sole or contributory negligence, carelessness and willfulness, (c) a denial that the automobile in question was being used under the family purpose doctrine, and (d) that the respondent's injuries were caused by the negligent and willful acts of Dickerson, Inc.

This case came on for trial before the Honorable James Hugh McFaddin, presiding Judge, and a jury, at the February, 1964, term of the Court of Common Pleas for Georgetown County and resulted in a verdict in favor of the respondent for $12,500.00 actual damages. During the course of the trial, the respondent, for a consideration of $1,500.00 entered into a "covenant not to sue" Dickerson, Inc. By stipulation the consideration for the aforesaid covenant was deducted from the amount of the verdict, leaving

the judgment of $11,000.00 to be paid by the appellants. At appropriate stages of the trial, the appellants made motions for a nonsuit and directed verdict in their favor and after the verdict for judgment *non obstante veredicto* and, in the alternative, for a new trial. These motions were refused and this appeal followed.

The first question for determination is whether the trial Judge erred in failing to grant the aforesaid motions of the appellants upon the ground that the only reasonable inference to be drawn from the testimony was that the respondent was guilty of contributory negligence and willfulness so as to bar him of recovery.

The question of whether or not there was error in refusing the motions of the appellants for a nonsuit, directed verdict and judgment *non obstante veredicto* and alternatively for a new trial, requires us to consider the testimony and the reasonable inferences to be drawn therefrom in a light favorable to the respondent. If more than one reasonable inference can be drawn, the case must be submitted to the jury. However, if the evidence is susceptible of only one reasonable inference, the question is no longer one for the jury but one of law for the court. Ordinarily, contributory negligence and willfulness is an issue for the jury and it rarely becomes a question of law for the court. If the only reasonable inference to be drawn from all the testimony is that the respondent was guilty of negligence and willfulness and such contributed as a proximate cause to his injury, then it would be the duty of the trial Judge to order a nonsuit or direct a verdict. If the inferences properly deducible from the evidence are doubtful, or tend to show both parties guilty of negligence or willfulness, and there may be a fair difference of opinion as to whose act proximately caused the injury complained of, then the question must be submitted to the jury. *West v. Sowell,* 237 S. C. 641, 118 S. E. (2d) 692.

U. S. Highway No. 17 runs generally north and south. At the place where the respondent was struck, the highway

is straight and level for three miles to the north and three-quarters of a mile to the south. The road on which the automobile of the appellants was being operated was a two lane highway and was being resurfaced with black asphalt. No white dividing line had yet been painted on the highway. There was under construction to the west of this road an additional two lane highway with a median strip separating the two highways. The median strip in this vicinity was covered with a mound of dirt approximately three to four feet high, being used in the construction of the highway. This dirt extended to the edge of the pavement of the road upon which Claude S. Finney, Jr. was operating the motor vehicle here involved. It appears that it had been raining off and on all day and that some of the dirt had washed onto the paved portion of the road. At the time the respondent was struck by the Finney automobile it was very dark and a misting rain was falling.

The respondent lived on the western side of U. S. Highway No. 17. He testified that he was a laborer and on the afternoon before his injury he was paid off by his employer at a community store and was given, along with the other employees, a can of beer. This took place about 4:30 in the afternoon. After attending to some personal matters the respondent arrived at his home at about 6:00 P. M. He testified that he washed up, dressed and walked to Eddie Ellis's place, which is located across and about three blocks up the highway and there, along with some others, he drank another beer. He left this place and went to McKenzie's Motel, which is located diagonally across and on the opposite side of the highway from respondent's home The respondent left McKenzie's and arrived at his home at about 11:00 P. M. and then discovered that he had only a few cigarettes and decided to walk back across to McKenzie's to purchase some. It began raining after respondent arrived at McKenzie's and it was necessary for him to wait there, before returning home, until the rain stopped. He left McKenzie's to return to his home and walked

across U. S. Highway No. 17 to the western edge thereof and attempted to cross the mound of dirt covering the median and when he found it muddy and impossible to walk upon and across, he turned to his right, walking north on the left side of the said highway facing motor vehicles coming south thereon. It was the purpose of the respondent to go north along the western edge of the highway to a place where there was an opening in the dirt piled on the median. He testified that when he had gone about fifteen feet he saw a car coming on the driver's right of the highway and he attempted to jump over the mound of dirt to avoid being struck by the car. He says at that time "it just hit me and throwed me up in here back on the mound." He testified as he was walking north that he was "right on the highway edge I would say close as I could be, it could be paved or it could be sand, I don't know which." When asked how far he was from the dirt embankment he said "not over a step" and when asked if he was three or four feet on the paved portion of the highway, his answer was, "I don't think it was one feet." In response to a question as to what he had had to drink, the respondent replied "I had two cans of beer" and "that's all I had."

The respondent testified that when he went out to cross U. S. Highway No. 17, he looked to the south and no car was approaching. He said he knew a car was approaching from the north. The testimony does not reveal how far to the north the Finney car was but it is reasonable to infer from the testimony that it was a sufficient distance to give the respondent enough time to cross the highway and to walk in a northerly direction on the left side thereof, a distance of fifteen feet.

A deputy sheriff of Georgetown County investigated this accident. He testified that the highway was under construction and there were signs up and down the highway warning everybody that such was the case. He described the neighborhood as being a residential area. He found the respondent

on the western side of the highway "with his body laying partially on the shoulder and his leg extended out in the highway." This witness would not say how far the respondent's leg extended into the highway. He said that he could smell the odor of alcohol on the respondent. A highway patrolman and the physician who attended the respondent stated that they smelled the odor of alcohol on the respondent. The ambulance driver who helped bodily to lift the respondent into the ambulance said he did not detect the odor of alcohol on him.

Eddie Ellis, a taxi driver and the operator of a small motel, testified that he went to McKenzie's Motel between 12:00 and 1:00 o'clock on August 5, 1961 and saw the respondent sitting at a table in the restaurant of the said motel and there were no alcoholic beverages on the table. Ellis was the one who summoned the deputy sheriff who investigated this accident. This witness testified that he returned to the scene of the collision after summoning the officer and saw the position in which the respondent was lying. He fixed the position of the respondent's body as being partly on the dirt of the median and with his feet on the pavement.

Elizabeth McKenzie, who operates McKenzie's Motel, testified that she did not serve the respondent any beer while he was in her place of business. She stated that as she was leaving the motel and going to her room that she heard the Finney car approaching and "it was in full speed." She says she looked towards the highway and heard a "thump" and that she heard a braking operation about two hundred feet south of where she heard the "thump". She testified that she went to the highway and saw the respondent and he was lying off of the highway on the shoulder, but some part of his leg "was to the paved." She testified that she checked the place of the collision and saw a place where "part of the wheel was on the dirt and part on the paved where he hit his brake but he hit his brake further down the line."

It appears from the testimony that Claude S. Finney owned a Cadillac Coupe and that on the night of August 4, 1961, he gave his son, Claude S. Finney, Jr., permission to use it. The son, in company with another young man and two young ladies, left Pawleys Island about 7:30 P. M. and went to Myrtle Beach, attending a show at the Beach Club. There he had two beers over a four hour period. After leaving the Beach Club this group went to the Fun Fair where they engaged in dancing. Thereafter, with Claude S. Finney, Jr., driving his father's automobile, they left on the return trip to Pawleys Island, driving south on U. S. Highway No. 17. The driver testified that the night was very dark and a misting rain was falling. He described the condition of the highway as being a resurfaced asphalt one with no center line and was wet due to the rain. The car was being driven at a speed of approximately fifty miles per hour with the windshield wipers operating and the headlights on low beam. The automobile was being operated in the right-hand lane of said highway and at a point opposite McKenzie's Motel Finney said that he saw the respondent "in a flash" in the middle of said right-hand lane, and at the time the respondent was approximately twenty-five feet in front of the car approximately four feet from the western edge of the pavement. This witness testified that he applied his brakes and swerved the automobile to the left, striking the respondent with the right front fender as he was walking in a staggering manner in a southwesterly direction with his back to the oncoming automobile. It was testified that the respondent had on very dark clothing. This witness observed the position of the respondent after the collision and said that three-fourths of his body was in the median portion and the lower quarter on the pavement.

Graham W. George, Jr., the male companion of young Finney, testified that he was riding in the back seat of the automobile at the time of the collision. His testimony was in the main corroborative of that of the driver of the automobile. However, he did testify that after the car was

stopped that Claude Finney, Jr., told him "that this fellow was walking away from him and was right in the middle of the highway, and that he just appeared, he was a black, negro man, he was wearing dark clothes, and the first thing he saw was right in front of him in the middle of the highway, and it left no time to apply the brakes or to slow or to avoid this man." He further testified that the right front fender of the car struck the respondent and "Claude said that this fellow was right in the middle of the highway and that he could have swerved either way but he did swerve to the left."

One of the grounds of the motion for a directed verdict in behalf of the appellants was that there was no evidence of any negligence, recklessness or willfulness on the part of Claude S. Finney, Jr., in the operation of the automobile in question. As is heretofore stated, the trial Judge refused such motion. The appellants do not challenge this ruling. Therefore, in determining whether the respondent was guilty of contributory negligence and willfulness, we will assume that the issue of negligence and willfulness on the part of the appellants was properly for the jury.

A pedestrian crossing a highway is required to exercise ordinary care for his own safety, that is such care as a reasonably prudent person would use under the same or smiliar circumstances. If a pedestrian crossing the highway neglects to exercise the care for his own safety that a reasonably prudent person would use, he is guilty of negligence which would bar recovery for any injuries that he may sustain when struck by a motorist, if such negligence proximately contributes to such.

Motorists have the duty of exercising ordinary or reasonable care to avoid injuring a pedestrian who is crossing a highway. The fact that a motorist, by statute, has the right of way over a pedestrian crossing a highway, does not relieve him of the duty to use reasonable care for the safety of such pedestrian, even though the statute requires a pedestrian on the highway to yield the right of way to the motorist.

Whether a pedestrian is guilty of contributory negligence and carelessness in crossing a highway is generally a question of fact for jury determination. The position of the pedestrian upon a highway or street at the time of the accident is significant in such respect. The material facts as to the position of the respondent at the time of his injury are in dispute. The appellants contend that the respondent was in the process of crossing the highway at an unmarked crosswalk and that he appeared "in a flash" in the middle of the right-hand lane, walking in a staggering manner in a southwesterly direction with his back to the Finney automobile, approximately 25 feet in front of the car and 4 feet from the western edge of the pavement. Upon this evidence, it is the contention of the appellants that the respondent was guilty of contributory negligence, recklessness and willfulness because of his violation of Section 46-435 of the Code, which provides that, "Every pedestrian crossing a roadway at any point other than within a marked crosswalk * * * shall yield the right of way to all vehicles upon the roadway." If the foregoing evidence was undisputed, the position of the appellants would raise a serious question for determination.

It has been held, however, that compliance with the Code section does not require a pedestrian to either get in a ditch or climb an embankment adjacent to a highway in order to yield the right of way to an approaching vehicle. *Smith v. Canal Ins. Co.,* 228 S. C. 45, 88 S. E. (2d) 780. The evidence in behalf of the respondent, which we are required to consider in a light favorable to him, shows that he had completed the crossing of the highway and had reached the western edge thereof and, because of the dirt embankment in the median, turned north and was walking longitudinally along the western or left side thereof, as close to the highway edge as he could facing traffic approaching from the opposite direction. Relevant to the position of the respondent on the roadway is Section 46-436 of the Code, which provides that, "[A]ny pedestrian walking along and

upon a highway shall when practicable walk only to the left side of the roadway or its shoulder, facing traffic which may approach from the opposite direction." In considering the aforesaid statute, it should be noted that there is no requirement therein that a pedestrian walking in accordance with the statute shall yield the right of way to all vehicles upon the roadway.

One walking on the left side of a highway and thereby facing traffic, as required by the aforesaid statute, is not guilty of contributory negligence as a matter of law; whether the circumstances render him contributorily negligent is a question for determination by the jury. *Haralson v. Jones Truck Lines,* 223 Ark. 813, 270 S. W. (2d) 892, 48 A. L. R. (2d) 248. The case of *Minacci v. Logudice,* 126 Conn. 345, 11 A. (2d) 354, was one upon facts somewhat similar to those here. The trial court set aside a verdict for the plaintiff upon the ground that she did not look with care for the approaching car. The evidence was in conflict as to whether the collision was on the concrete roadway or on the shoulder, as the plaintiff testified. The Court, in reversing the judgment below, said:

"The point * * * was not whether the plaintiff was negligent as a matter of law in failing to look or to see * * * as she proceeded across the traveled portion of the highway, but rather whether, after reaching the north shoulder or the grass beyond, she was negligent as a matter of law either in what she did or failed to do under the circumstances. * * * Whether she was contributorily negligent was a question for the jury."

We think, under the evidence heretofore recited, that an issue of fact for jury determination was presented as to whether the respondent was contributorily negligent, reckless and willful. More than one reasonable inference could be drawn from the evidence upon this issue and this required the trial Judge to submit such to the jury. It follows that the trial Judge committed no

error in refusing the motions of the appellants for a non-suit, directed verdict and judgment *non obstante veredicto*.

The next question for determination is whether the trial Judge erred in failing to direct a verdict in favor of the appellant, Claude S. Finney, upon the ground that the only reasonable inference to be drawn from the testimony is that the facts do not bring this case within the family purpose doctrine. It becomes unnecessary for us to decide this question because the issue here made is moot and academic on account of certain oral admissions made when this case was argued before us.

The respondent alleged in his complaint that he was struck and injured while walking in a southerly direction on the western side of U. S. Highway No. 17. At the trial of this case he testified that he was walking in a northerly direction on the western side of U. S. Highway No. 17 at the time he was struck and injured. This testimony was received without objection being made thereto by any party to the action. The record shows that he was cross examined, without any reservation as to the variance between his testimony and the allegation of his complaint with respect to the direction in which he was walking. At the close of the testimony on behalf of the respondent, a motion was made and granted allowing the respondent to amend his complaint to show that he was walking in a northerly direction rather than in a southerly one. The appellants objected to the amendment and now assert error on the part of the trial Judge in allowing such.

It is proper, during the trial of a case, for the Court to allow an amendment to conform the pleading to the facts proved, provided such amendment does not materially or substantially change the claim or defense of the party seeking the same. The allowance of an amendment for the purpose aforesaid is a matter largely in the discretion of the trial Judge. In *Mize v. Blue Ridge Ry. Co.*, 219 S. C. 119, 64 S. E. (2d) 253, we said:

"It is true that even though an act of negligence is not specified in the pleadings, if testimony relating thereto is introduced without objection, such act of negligence may ordinarily be considered by the jury. In other words, failing to make timely objection, the variance between the allegation and proof is waived. * * *"

The testimony of the respondent as to the direction in which he was walking, being admitted without objection, it was proper for the trial Judge to permit an amendment of the complaint to conform to the proof made and there was no abuse of discretion or error of law in so doing. The appellants were permitted to and did introduce evidence to show that the respondent was walking in a southerly direction.

It appears from the record that a highway patrolman participated in the investigation of the collision here involved. He testified in behalf of the respondent as to what he found during the course of such investigation. He was asked by counsel for the appellants if he was able to locate an "eye witness" to the collision. An objection to such testimony was sustained on the ground that the answer would be hearsay. We think the trial Judge's ruling was correct.

The exceptions of the appellants are overruled and the judgment below is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.