James L. LESTER, Administrator of the Estate of Flossie Mae Garner Brown, Deceased, Plaintiff,

v.

Heyward McFADDON and Cameron Lumber Company, Defendants.

Civ. A. No. 67-402.

United States District Court
D. South Carolina,
Columbia Division.

Aug. 2, 1968.

Harry S. Dent, Dent & Kennedy, Columbia, S. C., for plaintiff.

L. M. Gressette, Jr., Gressette & Gressette, St. Matthews, S. C., for defendants.

## ORDER

SIMONS, District Judge.

This is an action for wrongful death brought by the plaintiff, a resident and citizen of the State of Georgia, James L. Lester as Administrator of the Estate of Flossie Mae Garner Brown, deceased, against Heyward McFaddon, a resident of South Carolina, and Cameron Lumber Company, a South Carolina corporation. The action is founded upon Section 10–1951[1] of the 1962 Code of Laws of South Carolina, and is brought for the benefit of the nine minor children of plaintiff's intestate as provided for in Section 10–1952[2] of the 1962 South Carolina Code of Laws.

Plaintiff's complaint alleges that the defendant, Heyward McFaddon, an agent and employee of the corporate defendant, Cameron Lumber Company, was driving the latter's 1962 Chevrolet pickup truck at about 6:45 p. m. on September 27, 1966, in an easterly direction along U. S. Highway 601 about one-fourth mile north of the Town of St. Matthews in Calhoun County, South Carolina, in a negligent and reckless manner and caused said vehicle to leave the paved portion of the highway and to strike plaintiff's intestate, Flossie Mae Garner Brown, as she was walking along the edge of the said highway on the dirt shoulder thereof in a northerly direction on the western side of said highway; further, that said Flossie Mae Garner Brown died as the result of injuries she received in the collision. Plaintiff's complaint further alleges that Defendant McFaddon was negligent, wilful and wanton in the operation of the motor vehicle on said occasion by failing to maintain a proper lookout, failing to have his vehicle under control, and driving too fast for conditions, and failing to keep the speed of his vehicle within proper limits, and failing to exercise due care in observing pedestrians walking along the edge of the highway. Plaintiff seeks both actual and punitive damages.

In their answers the defendants plead a general denial; that the death of the deceased was proximately caused by her own sole negligence and recklessness; contributory negligence, recklessness, and wilfulness of the deceased, which combined and concurred with any acts of negligence, recklessness, wilfulness and wantonness of defendants; and that the death of the deceased was the result of an unavoidable accident.

The case was tried without a jury on June 3, 1968 in the Columbia Division of this court after having been transferred to the Columbia Division from the Orangeburg Division by consent of counsel for the parties. In accordance with Rule 52(a) of the Federal Rules of Civil Procedure I find the facts specially and

1. "§ 10–1951. *Civil action for wrongful act causing death.*—Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony. In the event of the death of the wrongdoer, such cause of action shall survive against his personal representative."

2. "§ 10–1952. *Beneficiaries of action for wrongful death.*—Every such action shall be for the benefit of the wife or husband and child or children of the person whose death shall have been so caused, and, if there be no such wife, husband, child or children, then for the benefit of the parent or parents, and if there be none such, then for the benefit of the heirs at law or the distributees of the person whose death shall have been so caused. Every such action shall be brought by or in the name of the executor or administrator of such person."

state my conclusions of law thereon as follows:

## FINDINGS OF FACT

1. Plaintiff is a citizen and resident of the State of Georgia and is the duly appointed Administrator of the Estate of Flossie Mae Garner Brown who died intestate while a resident of Calhoun County, South Carolina, on September 27, 1966, plaintiff having been appointed Administrator of said estate by order of Honorable Bessie D. Hiott, Judge of Probate for Calhoun County, South Carolina, on May 18, 1967. He brings this action for the benefit of the statutory beneficiaries of the deceased under the laws of South Carolina. Defendant Heyward McFaddon is a resident and citizen of Calhoun County, South Carolina, and Defendant Cameron Lumber Company is a South Carolina corporation having its principal place of business at Cameron in Calhoun County, South Carolina.

2. On September 27, 1966 at about 6:45 p. m. plaintiff's intestate was walking along the western side of U. S. Highway 601 just off the paved portion of the highway along the grassy shoulder thereof with her daughter Shirley Brown who was between seven and eight years of age at that time. The deceased and her daughter had been visiting in the home of her mother, Sara Jane Garner, and had left to go to their home which was located north of the Town of St. Matthews on the farm of Frank Wannamaker, Jr. It was just about dusk or first dark; there had been a slight rain; the pavement was somewhat wet and visibility was limited because of the fog.

3. Just as the deceased and her daughter reached a point along the highway just north of the limits of the Town of St. Matthews and also just north of a S. C. Highway Department 45 mph speed sign governing the speed of traffic traveling in a southerly direction into the Town of St. Matthews, Defendant McFaddon, who was operating the 1962 Chevrolet pickup truck owned by Defendant Cameron Lumber Company, was driving said vehicle in a southerly direction in the right-hand lane of U. S. Highway 601. He was driving the truck with the express consent of the corporate defendant, Cameron Lumber Company, and within the scope of his duties and employment for said defendant, inasmuch as he was returning to St. Matthews after transporting some of the lumber company's employees to their homes. Defendant was driving the pickup truck at an approximate speed of 40 to 45 mph. His headlights were on and there is some evidence, although there is a dispute on this particular point, that he was meeting some other cars proceeding in the opposite direction with their headlights on. McFaddon did not see or observe the deceased or her daughter at any time prior to the collision, although they were walking toward him along the dirt shoulder of the roadway just off of the paved portion of the highway. Defendant McFaddon permitted the right hand portion of his truck to run off the traveled portion of the highway violently striking the deceased with the right front fender and headlight of the pickup. It is determined that the point of impact occurred at the approximate point marked "X" on plaintiff's exhibit two, which is a colored photograph of the scene of the accident.

McFaddon did not apply the brakes of the truck prior to striking plaintiff's intestate as he did not see her and did not realize what he had hit until he stopped the truck some 420 feet from the approximate point of impact and came back to the scene to determine what object he had collided with. There were no skid or tire marks along the pavement which were laid down by the truck, neither were there any tire marks upon the grassy dirt shoulder of the highway at or near the point of impact.

4. The body of the deceased was knocked about 53 feet from where it was struck, coming to rest on the paved sidewalk off to the western side of the highway, 25 feet from the center line of the highway and 13 feet from the paved

traveled portion of same. Broken automobile headlight glass (Plf. Ex. 8) was found by the deceased's son, John Edward Garner, near the area of the point of impact and in the general area of where the deceased's body was hurled as a result of the collision.

5. McFaddon was driving the truck at the time of impact in a speed zone with a maximum limit of 55 mph. He was approaching within a very short distance the posted 45 mph speed limit zone admittedly driving from 40–45 mph. According to his testimony he was meeting on-coming vehicles with their headlights burning. It was rainy, damp, and the road was wet. It was foggy and misty enough for him to have his windshield wipers operating. He stated that with his dim headlights on he could only see 75 to 100 feet in front of him. Under the circumstances existing it is concluded that because of his limited visibility, the weather and traffic conditions, that a speed of 40–45 mph was too fast for conditions.

6. The most critical factual issue in the case is whether or not McFaddon permitted the right portion of his truck to leave the paved portion of the highway to travel over to the grassy dirt shoulder on the right side thereof and strike the deceased while she was walking facing traffic approaching him; or whether the deceased was actually walking on the traveled paved portion of the highway and was struck by the pickup truck without its having left its traveled portion of the highway. There are only two surviving eyewitnesses to the collision, the defendant McFaddon who testified that at no time did his truck leave the traveled portion of the highway which by inference would place the deceased on the traveled portion of the highway, although McFaddon did not see her or her daughter before the impact and in fact did not know what object he had struck. The only other eye witness was Shirley Brown, the deceased's eight year old daughter, who was walking with the deceased and to her left at the time of the impact. She testified at the trial that she and her mother were walking along the edge of the road on the dirt shoulder when she saw the truck coming, that she told her mother to get further in the ditch and that the truck struck her mother before she could move. She further testified that she did not see any other vehicles along the highway at that time as she only saw the truck. It is noted that Sgt. J. K. Westberry of the S. C. Highway Patrol who investigated the fatal collision went immediately to the scene of the accident from his home when he first got the message, arriving there shortly before 7:00 p. m. He testified that he could not find any skid marks on the pavement or any tire marks on the shoulder, neither did he find any debris on the pavement itself. He and Frank Wannamaker, Jr., who testified for plaintiff, talked with the deceased's daughter, Shirley Brown, about fifteen minutes after he arrived at the scene. Both Sgt. Westberry and Mr. Wannamaker testified that Shirley was highly upset and emotional at the time they talked with her, that she told them that when she saw the truck coming she yelled to her mother to "Get out of the road or you will be hit", then stated that her mother was not on the pavement but was off on the dirt shoulder of the road.

7. Considering all of the circumstances, the fact that the debris from the collision including the broken headlight glass from the truck was located on the shoulder of the road off of the pavement in the direction that the deceased's body was thrown after impact, the location of the Argo starch box (Plf. Ex. 7) which she had in her hand at the time she was struck which was found about a foot or two off the pavement on the grass shoulder, and especially considering the testimony of Shirley Ann Brown, the only living person who saw the deceased immediately prior to the impact, who told Sgt. Westberry and Mr. Wannamaker shortly after the collision which she reiterated again in sworn testimony on trial that her mother was off the pavement on the shoulder when she was struck, it is concluded that the

plaintiff has established by the preponderance of the evidence that the deceased was walking along the dirt shoulder at the time defendant's truck struck her.[3]

8. The deceased was killed instantly as a result of the impact. At the time of her death on September 27, 1966 she was 35 years of age and under the South Carolina Mortuary Statute, Section 26-12 of the 1962 South Carolina Code of Laws, she had a life expectancy of 36.69 years. She was the mother and apparently the major support of her nine minor children who ranged in age from four months to sixteen years at the time of her death. All of her children were residing with her, and according to their grandmother, Sara Jane Garner, they have taken their mother's death very hard. The deceased worked part-time on the farm of Frank Wannamaker, Jr., and according to his testimony, she earned approximately $150 per year from the odd jobs which she did for him. The statutory beneficiaries have lost the financial support which their mother was able to provide for them and they have also been deprived of her affection, companionship, guidance and control. The funeral bill of the deceased as shown by plaintiff's exhibit six (bill from Holley Funeral Home) is the sum of $680.05.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and the subject matter of this action based upon diversity of citizenship and the amount in controversy.

■■■ 2. The rights and duties of the parties are governed by the laws of the State of South Carolina, the place where the collision occurred.

3. The Statute Laws of the State of South Carolina which are relevant to the issues herein are as follows:

(a) Sec. 46-361 of the 1962 South Carolina Code of Laws which gives the general rule as to speed restrictions, as follows:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

(b) Sec. 46-363 of the 1962 South Carolina Code of Laws:

"The driver of every vehicle shall, consistent with the requirements of § 46-361, drive at an appropriate reduced speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when any special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."

(c) Sec. 46-436, as amended, of the 1962 South Carolina Code of Laws, entitled "Pedestrians on roadways" provides as follows:

"Where sidewalks are provided, it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway. Where sidewalks are not

---

3. In opposition to this conclusion defendants strongly urge that since it had been raining and since the truck had mud tires on the back wheels, if it had run off the pavement onto the grassy dirt shoulder it would have left tire marks thereon. However, Sheriff Elliott Rucker of Calhoun County testified that the shoulder in the area of impact was a grassy hard shoulder and that subsequent to the collision he revisited the scene and ran a station wagon which was heavier than the pickup truck off the pavement onto the shoulder under similar weather conditions and at a good rate of speed after it had been raining, and that no marks or tracks were left on the shoulder as a result thereof.

provided,[4] any pedestrian walking along and upon a highway shall walk only on the left side of the roadway or as near as practicable to the edge of such roadway, or its shoulder, facing traffic which may approach from the opposite direction."

(d) Sec. 46–442 of the 1962 South Carolina Code of Laws, entitled "Drivers to exercise due care" provides:

"Notwithstanding the provisions of this article every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any ·child or any confused or incapacitated person upon a roadway."

4. Under South Carolina law a pedestrian crossing or walking along a highway is required to exercise ordinary care for his own safety, that is such care as a reasonably prudent person would have exercised under the same or similar circumstances; and if he fails to exercise such care for his own safety then he is guilty of negligence which would bar recovery for any injuries and damages he may sustain when struck by a motorist if the pedestrian's negligence proximately contributed to same. Johnson v. Finney, 246 S.C. 366, 143 S.E.2d 722 (1965). Whether a pedestrian is guilty of contributory negligence is generally a factual question to be determined by the trier of facts from all the facts and circumstances surrounding the accident, and the position of a pedestrian along or upon the highway at the time of the accident is significant and relevant to such determination. One walking on the left side of the highway and thereby facing traffic as required by Sec. 46–436 of the 1962 South Carolina Code of Laws, supra, is not guilty of contributory negligence as a matter of law. It is dependent upon all of the existing circumstances.

5. Motorists using the highways have the duty of exercising ordinary or reasonable care to avoid injuring a pedestrian who is crossing or upon or along a highway, and the fact that a motorist may have the right-of-way over a pedestrian does not relieve him of the duty to use reasonable care for the safety of such pedestrian, even though a statute may require a pedestrian on the highway to yield the right-of-way to the motorist. Johnson v. Finney, supra.

6. Based upon the foregoing statutory and common law rules of the road applicable in South Carolina, and in view of the foregoing findings of fact, the court concludes that Defendant Heyward McFaddon, who was acting within the scope of his employment and duties for Defendant Cameron Lumber Company at the time of the fatal collision, was guilty of negligence in the operation of the pickup truck on the occasion in question, which was imputable to and chargeable against his employer in the following particulars:

(a) By his own admission he was operating his truck upon a straight roadway with his headlights on; he failed to see the deceased and her daughter who were walking toward him along the shoulder of the highway. Therefore, it can only be concluded that he failed to keep a proper lookout for other persons lawfully along the highway.

(b) He permitted his truck to leave the paved or traveled portion of the highway, to run partially over onto the dirt shoulder thereof and strike the deceased who was walking lawfully along the highway in accordance with Section 46–436 of the 1962 South Carolina Code of Laws, supra.

(c) He was operating his truck too fast for existing conditions in violation of Section 46–361 and 46–363 of the 1962 South Carolina Code of

---

4. There were no sidewalks provided along the highway at the point where deceased was struck by defendant's truck.

Laws, supra, considering that it was a rainy, misty, foggy night, the pavement was wet, he was facing the headlights of on-coming traffic, he was just entering a maximum 45 mph speed zone and the Town Limits of St. Matthews, while his visibility was limited from 75 to 100 feet maximum, and he was driving under his own admission from 40 to 45 mph.

(d) He failed to avert the accident by signal, brakes or slight change of his course when his half of the 24 ft. roadway gave him sufficient room to have avoided a collision with the deceased without entering the other traffic lane, even if the deceased had been walking on the edge of the concrete, but according to his own testimony he did not see her at all before the collision. Smith v. Canal Ins. Co., 228 S.C. 45, 88 S.E.2d 780 (1955).

(e) Even assuming that the deceased was actually walking on the paved portion of the highway at the time of the collision, which the court from the evidence has concluded that she was not, defendant failed to exercise due care to avoid colliding with her as required by Section 46–442, supra.

7. Defendant's violation of Section 46–361 and 46–363 of the South Carolina Code, supra, constituted negligence *per se*, or negligence as a matter of law. Field v. Gregory, 230 S.C. 39, 94 S.E.2d 15 (1956).

8. Defendant's negligence in the operation of the truck upon the occasion in question was the direct and proximate cause of the collision and resulting death of plaintiff's intestate, without which such would not have occurred.

9. Defendant's defense of contributory negligence of the deceased is an affirmative defense, which the defendants have failed to establish by the preponderance or greater weight of the evidence. It is further concluded that there has been no establishment by defendants of any contributory negligence on the part of the deceased which was a contributing or concurring proximate cause of the collision and her resulting death, sufficient to bar plaintiff's recovery in this case.

10. The nine children of the deceased, who are the statutory beneficiaries in this wrongful death action under Sections 10–1952 and 10–1954 of the 1962 South Carolina Code of Laws, have suffered actual damages as a result of the wrongful death of their mother, Flossie Mae Garner Brown; and plaintiff is entitled to recover in behalf of such beneficiaries the sum of Fifteen Thousand ($15,000.00) Dollars actual damages.

In accordance with the foregoing findings and conclusions of law, it is

Ordered that plaintiff have judgment against the defendants, Heyward McFaddon and Cameron Lumber Company, jointly and severally, in the amount of Fifteen Thousand ($15,000.00) Dollars, actual damages.

Let judgment be entered accordingly.