1078

Samuel H. CARTER, Respondent v. R. L. JORDAN OIL COMPANY, INC., Equipment Maintenance and Repairs, Inc., and Fruehauf, Inc., Defendants, of whom R. L. Jordan Oil Company, Inc., and Equipment Maintenance and Repairs, Inc., are Appellants.

(365 S. E. (2d) 324)

Court of Appeals

*James W. Hudgens* and *Michael B. T. Wilkes,* both of *Ward, Barnes, Long, Hudgens, Adams & Wilkes,* and *James C. Cothran, Jr.,* of *King, Cothran & Hray,* Spartanburg, *for appellants.*

*John B. White, Jr.,* and *Kenneth C. Anthony, Jr.,* of *Knie, White & Anthony,* Spartanburg, *for respondent.*

Heard Sept. 23, 1987.

Decided Jan. 25, 1988.

BELL, Judge:

This is a negligence action. Samuel H. Carter was seriously injured when a wheel separated from a tractor

trailer and struck the van he was driving. R. L. Jordan Oil Company, Inc., owned the tractor trailer, which was driven by one of its servants. Equipment Maintenance and Repairs, Inc., performed maintenance and repair work on the trailer under a contract with Jordan. Fruehauf, Inc. manufactured the trailer. Carter sued Jordan for negligent failure to maintain its vehicle in safe operating condition, Equipment Maintenance for negligent repair of the trailer, and Fruehauf for negligent manufacture of the trailer and for an alleged design defect. The trial judge granted Fruehauf a directed verdict on both the negligence and strict liability causes of action. He denied motions by Jordan and Equipment Maintenance for a directed verdict. The jury returned a general verdict against Jordan and Equipment Maintenance for $175,000.00 actual damages. In addition, the jury assessed punitive damages of $40,000.00 and $160,000.00 against Equipment Maintenance and Jordan, respectively. Both Equipment Maintenance and Jordan appeal. We affirm the judgment against Equipment Maintenance. We reverse the judgment against Jordan.

When reviewing a jury verdict, we are limited to determining if there is any evidence to support it. *Willis v. Floyd Brace Co., Inc.*, 279 S. C. 458, 309 S. E. (2d) 295 (Ct. App. 1983). The evidence and all reasonable inferences arising therefrom must be viewed in the light most favorable to the respondent. *Buzhardt v. Cromer*, 272 S. C. 159, 249 S. E. (2d) 898 (1978); *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Bruce*, 284 S. C. 227; 325 S. E. (2d) 77 (Ct. App. 1985).

Jordan owns and operates a fleet of tractor trailers which it uses to haul gasoline from its depot in Spartanburg to filling stations throughout Georgia and the Carolinas. Equipment Maintenance, a repair shop located in Spartanburg, performs substantially all of the maintenance and repairs on Jordan's trucks.

On the morning of May 4, 1983, two tractor trailers departed from Jordan's main office near Spartanburg headed for the Jordan depot off Pine Street. The lead truck was driven by Norman Brock, the second truck by Joe Larry Scott. At the intersection of Country Club Road and Pine Street, both drivers made a right hand turn onto Pine

Street. As they made their turns, a wheel assembly separated from Brock's trailer, and rolled, out of control, across Pine Street. Carter, traveling north on Pine Street in his van, was stopped at the red light when the wheel came free. The wheel struck Carter's van, causing him injury.

The wheel assembly is held in place by a castellated nut which screws onto the axle. A cotter pin is inserted through a hole in the axle between one of the castellations. It prevents the nut from rotating off the axle while the wheel assembly is in motion. In this case, the cotter pin broke, allowing the nut to rotate off the axle. By the time Brock's trailer reached the intersection of Country Club Road and Pine Street, the nut had come off the axle. With the nut no longer holding the wheel assembly on the axle, the wheel broke free.

In January 1983, almost four months before the accident, Equipment Maintenance repaired the trailer's brakes. Necessarily, its mechanic removed the wheel assembly, including the cotter pin, to perform the repairs. To remove the cotter pin, one must straighten its legs and pull it out. Each time the legs of a cotter pin are bent and restraightened, they become weaker. If they are bent and restraightened a number of times, they will break. Carter's theory at trial was that when the mechanic reaffixed the wheel assembly to the axle, he installed a used cotter pin. Since the legs of the used cotter pin had been bent and restraightened, they were in a weakened condition, causing the cotter pin to break and fall out of the axle.

## I.

We first consider Equipment Maintenance's appeal. Based on its view of the evidence, Equipment Maintenance takes exception to several rulings of the trial judge.

## A.

Dr. Timothy A. Jur, an expert witness for Carter, testified that the cotter pin was reused. On cross examination, Jur stated he based this opinion in part on his past observations of automotive mechanics working in the field. Equipment Maintenance objected to this testimony, arguing that the basis for Jur's opinion—observation of human nature—is

outside his area of expertise. *See District of Columbia Redevelopment Land Agency v. Thirteen Parcels of Land in Squares 859, 912, 934 and 4068 in the District of Columbia,* 534 F. (2d) 337 (D. C. Cir. 1976) (opinion of an expert witness who bases his testimony on improper and incompetent grounds should not be admitted). The trial judge ruled that Jur had presented sufficient evidence within his area of expertise on which to base his opinion. The judge concluded Jur's statements on cross examination went to the weight of his opinion, not to its admissibility. Equipment Maintenance contends the judge erred in refusing to strike Jur's testimony.

The parties stipulated the Federal Rules of Evidence would govern at trial. Accordingly, we review the judge's ruling by applying the Federal Rules of Evidence.

A witness may testify as to his expert opinion on a particular matter if the testimony will aid the trier of fact in understanding evidence or in determining a fact in issue, and he is "qualified as an expert by knowledge, skill, experience, training, or education. . . ." FED.R.EVID. 702. An expert is given wide latitude in determining the basis of his testimony. *Mannino v. International Manufacturing Company,* 650 F. (2d) 846 (6th Cir. 1981) (interpreting FED.R.EVID. 703). The admission of expert testimony is within the sound discretion of the trial judge. *See Bonaparte v. Floyd,* 291 S. C. 427, 354 S. E. (2d) 40 (Ct. App. 1987). Unless the trial judge clearly abuses his discretion, his admission of expert testimony will be sustained on appeal. *Id.*

Jur testified regarding several theories he explored, then explained through use of data why reuse of the cotter pin was the most probable cause for its failure. He explained how he weighed the damaged cotter pin, examined it under a microscope, and reconstructed it, then told why the data led him to conclude the cotter pin was reused. He described the metallurgical test he ran on the damaged cotter pin, which led him to exclude the possibility that the pin failed because of a latent defect. The trial judge reasonably determined from this evidence that Jur's opinion was founded on a logical basis within the scope of his expertise. Looking at Jur's testimony as a whole, we find no abuse of

discretion. The isolated statement on cross examination went to the credibility and weight of his opinion, not to its admissibility. *See Polk v. Ford Motor Co.*, 529 F. (2d) 259 (8th Cir. 1976), *cert. denied*, 426 U. S. 907, 96 S. Ct. 2229, 48 L. Ed. (2d) 832; *Breidor v. Sears, Roebuck and Co.*, 722 F. (2d) 1134 (3d Cir. 1983).

## B.

At the close of all evidence, Equipment Maintenance ■ made a motion to strike two specifications of negligence from Carter's complaint. The first alleged that Equipment Maintenance negligently failed to follow the operator's manual when making repairs. The second alleged that Equipment Maintenance negligently used improper tools when making repairs. The trial judge denied both motions. Equipment Maintenance asserts this was an abuse of discretion because there was no evidence to support either allegation. A review of the record reveals otherwise.

Carter introduced the operator's manual as evidence of the proper amount of torque to be applied when tightening the axle nut. By Equipment Maintenance's own admission, the torque it applied to the nut did not comply with the manual. This was sufficient evidence to support the allegation of failure to follow the manual.

Robert K. Taylor, an expert witness for Carter, testi- ■ fied as to his inspection of the nut retrieved from the accident scene. He described scarring on the nut. He concluded the nut had been beaten with a hammer and chisel to loosen and tighten it. This, he explained, greatly increased the wear on the threads of the nut, placing a greater strain on the cotter pin. Taylor and the president of Equipment Maintenance both testified that the proper way to tighten or loosen an axle nut was with a torque wrench. Both agreed that beating the nut with a hammer and chisel was not good mechanical practice. Without question, this was evidence of improper tool use and of a causal link between the improper use and the accident.

## C.

After the jury returned its verdict, Equipment Maintenance moved to set aside the punitive damages. The trial

court denied its motion. Equipment Maintenance asserts this was error because there was no evidence to support a finding of punitive damages.

Evidence of simple negligence alone will not support an award of punitive damages. *Cohen v. Allendale Coca-Cola Bottling Co.*, 291 S. C. 35, 351 S. E. (2d) 897 (Ct. App. 1986).

> [T]here must be evidence the defendant's conduct was wilful, wanton, or in reckless disregard of the plaintiff's right's.... Conduct is wilful, wanton, or reckless when it is committed with a deliberate intention under such circumstances that a person of ordinary prudence would be conscious of it as an invasion of another's rights. It is the present consciousness of wrongdoing that justifies the assessment of punitive damages against the tortfeasor.

*Id.* at 40, 351 S. E. (2d) at 900 [citations omitted].

Carter presented some evidence of conscious wrongdoing to support an award of punitive damages. Taylor testified the nut had been beaten by a hammer and chisel. Dr. Jur testified the cotter pin had been reused. The jury could have reasonably concluded that either act was conscious and that a person of ordinary prudence would know that such acts are a dereliction of duty. A conscious failure to exercise due care warrants a jury in awarding punitive damages. *See Wannamaker v. Traywick*, 136 S. C. 21, 134 S. E. 234 (1926). Since there was evidence of wilful negligence, the trial judge properly denied Equipment Maintenance's motion.

II.

We turn now to Jordan's appeal. Jordan asserts that the trial judge erred in denying its motion for a directed verdict because, with respect to each specification of negligence, Carter failed to establish an essential element of his case.

To establish a cause of action for negligence a plaintiff must show the concurrence of three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by negligent act or omission; and (3) damage proximately resulting from the breach of duty. *South Carolina State Ports Authority v.*

*Booz-Allen & Hamilton,* 289 S. C. 373, 346 S. E. (2d) 324 (1986); *Brown v. South Carolina Ins. Co.,* 284 S. C. 47, 324 S. E. (2d) 641 (Ct. App. 1984), *cert. dismissed.* 290 S. C. 154, 348 S. E. (2d) 530 (1985). These elements must be established by the party alleging the negligent act. *Sherrill v. Southern Bell Tel. & Tel. Co.,* 260 S. C. 494, 197 S. E. (2d) 283 (1973); *Carter v. Columbia and Greenville R.R. Co.,* 19 S. C. 20 (1882). The absence of any one of these elements renders the cause of action insufficient. *South Carolina State Ports Authority v. Booz-Allen & Hamilton, supra.*

The duty of care is that standard of conduct the law requires of an actor in order to protect others against the risk of harm from his actions. *See Toone v. Adams,* 262 N. C. 403, 137 S. E. (2d) 132 (1964). The law does not make the actor an insurer against all possible harm he may cause. *See Northern Freight Lines, Inc. v. Southern Railway Company,* 108 Ga. App. 189, 132 S. E. (2d) 541 (1963); *cf., Young v. Morrisey,* 285 S. C. 236, 329 S. E. (2d) 426 (1985); *Grier v. Cornelius,* 247 S. C. 521, 148 S. E. (2d) 338 (1966). He is not required to guard against harm which is not reasonably to be anticipated, or which is so unlikely to occur that the risk, although recognizable, would commonly be disregarded. *See Cunis v. Brennan,* 56 Ill. (2d) 372, 308 N. E. (2d) 617 (1974). A duty of care arises only with respect to a danger which is apparent to one in the position of the actor before the harm occurs. *Id.* It is not enough that the danger can be perceived by "looking back at the mishap with the wisdom borne of the event." *Greene v. Sibley, Lindsay & Curr Co.,* 257 N. Y. 190, 192, 177 N. E. 416, 417 (1931) (Cardozo, J.).

As a general rule, the owner or operator of a motor vehicle is not liable for an injury resulting from its defective condition in the absence of negligence on his part. *Burnett v. Avera,* 203 So. (2d) 788 (Miss. 1967). However, before he operates it upon the highway, he has a duty to exercise reasonable care to see that the vehicle is in such safe mechanical condition as not to endanger any person or property. Sections 56-5-4410, 56-5-5310, Code of Laws of South Carolina, 1976. To fulfill this duty, he must make reasonable inspection of the vehicle to discover conditions that present an unreasonable risk of harm to others, and he

is chargeable with knowledge of any defects that such an inspection would disclose. *Burnett v. Avera, supra; Employer's Casualty Co. v. Baxter Fertilizer Co., Inc.,* 338 So. (2d) 418 (Ala. Civ. App. 1976). In other words, he is liable for injuries which are shown to have resulted from conditions which he knew, or in the exercise of reasonable care ought to have known, were so unsafe as to endanger others. *Burnett v. Avera, supra; Bolin v. Corliss Co.,* 262 Mass. 115, 159 N. E. 612 (1928); *cf. Dickard v. Merritt,* 256 S. C. 458, 182 S. E. (2d) 886 (1971).

A.

Among his specifications of negligence, Carter alleged that Jordan (1) failed to inspect Equipment Maintenance's work on the trailer to ensure it was properly done; (2) failed to inspect invoices submitted by Equipment Maintenance for that work; and (3) failed to make a reasonable pretrip inspection of the trailer before taking it on the highway on the day of the accident.

Unless the law imposes on owners of motor vehicles a general duty to inspect either the work or the invoice of a mechanic after he completes maintenance or repairs, Jordan's failure to make such inspections does not constitute actionable negligence. We hold that there is no duty to make such inspections, if (1) the work is of a kind within the competence of the ordinary mechanic performing that type of work; (2) the defect in the work is not of a character that would make it apparent to a person of ordinary prudence in the owner's position; and (3) the owner reasonably relies on the competence of the mechanic as a sufficient assurance that the vehicle is safe to operate.

Most owners do not possess the mechanical skills necessary to maintain a motor vehicle in a reasonably safe operating condition. Therefore, when a vehicle is in need of maintenance, the ordinary prudent person will have a qualified mechanic service it. When a mechanic undertakes to repair a vehicle, he holds himself out as specially qualified to perform the work. *See Hutson v. Cummins Carolinas, Inc.,* 280 S. C. 552, 314 S. E. (2d) 19 (Ct. App. 1984). He also impliedly assumes a duty to make the repairs in a skillful, careful, diligent, and workmanlike manner. *Id.*

Once the work is completed, the owner will not normally possess the knowledge or mechanical skills necessary to make an adequate inspection for improper work by the mechanic. Moreover, inspection of work that requires parts of the vehicle to be disassembled is rarely practical for a layman. If the owner has no knowledge that the repairs are defective, there is no apparent danger in operating the vehicle without inspecting the mechanic's work. For these reasons, the owner ordinarily has a right to rely on a qualified mechanic's work without further inspection.[1]

Similarly, a mechanic's invoice is not so likely to reveal the unsafe operating condition of a vehicle that owners should be under a special duty to review it for evidence of bad workmanship. If a defect in the work is not otherwise apparent to a prudent owner, it is improbable that reading an invoice will alert him that the vehicle is unsafe to operate. As a practical matter, creating a duty to inspect invoices would simply permit more lawsuits based on the hindsight borne of the mishap. Entries or omissions on the mechanic's invoice would inevitably assume a significance after the accident that would not have been apparent beforehand.

In this case, Jordan did not have a duty to inspect the brake job done in January. There was no reason for Jordan to question the competence of Equipment Maintenance.[2] Brake repairs are work within the competence of an ordinary truck mechanic. The brakes and the cotter pin were internal parts not visible without some disassembly of the wheel. There is no evidence that Jordan possessed special mechanical expertise or knew the cotter pin was reused. In these circumstances, it could reasonably rely on Equipment Maintenance's competence as a sufficient

---

[1] Of course, one can always conceive of a situation in which someone is injured as a result of a mechanic's improper repairs to a vehicle. The law, however, does not require the owner to guard against every possible contingency, so that failure to guard against remote possibilities of injury does not give rise to liability.

[2] The trial judge dismissed Carter's cause of action against Jordan for negligent hiring. No appeal was taken from that ruling.

assurance that the vehicle was safe to operate. It had no further duty to inspect the work itself.

The same reasoning applies to inspection of the invoice. Carter contends that had Jordan reviewed the invoice to ensure the work was properly done, it would have noticed the invoice did not include cotter pins in the list of parts for the January brake relining. From this omission, Carter argues, Jordan could have deduced that the cotter pins were reused, making the trailer unsafe to operate.

Whether a person of reasonable foresight could make this deduction or not, Jordan was under no duty to review the invoice for evidence of negligent repairs. The work was within the competence of an ordinary mechanic. Jordan had no special mechanical expertise. In the absence of other circumstances which would alert an ordinary person to the defect in workmanship, Jordan was entitled to rely on the competence of Equipment Maintenance as a sufficient assurance that the vehicle was safe without inspecting the invoice.

Carter cites *Jenkins v. Long Motor Lines*, 233 S. C. 87, 103 S. E. (2d) 523 (1958), in support of the owner's duty to inspect a mechanic's work. In *Jenkins*, the plaintiff was injured when defendant's truck overturned as a result of improper loading by the shipper. Applicable highway regulations provided that the driver of a motor vehicle has a duty to make a reasonable inspection of cargo to be transported to see that it is properly loaded. Since there was evidence that the defendant's driver did not inspect the cargo, the Court held the defendant breached its duty. *Jenkins* is distinguishable from this case because there is no regulation creating a duty to inspect the work or invoice of a mechanic.

As a separate specification of negligence, Carter alleges that Jordan failed to perform the pretrip inspection recommended in the operator's manual. The manual says nothing about inspecting the cotter pin or wheel assembly before each trip. However, among other items, it does recommend that the operator inspect the bearing oil level in the wheel hub. The oil level is checked by looking through a plastic hub cap.

The evidence showed that the hub cap on the wheel assembly involved in the accident had turned yellow from age and sulfur in the oil, so that one could no longer see the cotter pin inside. There was testimony that the oil level could also be checked by pulling off a rubber plug on the hub cap and looking through the hole normally occupied by the plug. When checking the oil in this manner, one could see the cotter pin.

Carter asserts that Jordan had a duty to conduct the pretrip inspection described in the manual before operating the trailer on May 4th. He alleges that Jordan made no such inspection that day. Had the recommended inspection been made, Carter argues, Jordan would have discovered the cotter pin was broken.

We assume without deciding that Jordan had a duty to make an inspection of the items listed in the operator's manual before each trip. Our review of the record shows that Carter failed to prove a breach of this duty.

At trial, Carter introduced the testimony of Joe Larry Scott, the driver who followed Norman Brock on the morning of the accident. Scott testified that prior to leaving Jordan's main office he and Brock inspected their tractor trailers. When asked to describe the "inspection that you made of your truck," Scott described how he inspected his tires and lights. When asked if he inspected anything other than tires and lights, Scott said, "no." Viewing Scott's testimony in the light most favorable to Carter, it is inferable that Scott, when making his pretrip inspection, did not check the bearing oil level on the trailer he drove that day. Scott did not, however, testify to the pretrip inspection Norman Brock made of the trailer involved in the accident. Scott also did not testify as to the pretrip inspection practices of Jordan's drivers in general, probably because he was not competent to do so. Put simply, Carter introduced no evidence that Brock failed to inspect the bearing oil level on his trailer on the morning of May 4th.

It is elementary that the jury could draw no inference about Brock's inspection of his trailer from Scott's failure to check the bearing oil on his trailer. Brock's trailer, not Scott's caused the injury to Carter. Thus, the details of Scott's inspection were incapable of affording any reason-

able presumption or inference regarding the accident. What Scott did was *res inter alios acta* as to Carter. In law, it was not relevant to prove Jordan's liability. *See Ward v. Liberty Life Ins. Co.*, 232 S. C. 582, 103 S. E. (2d) 48 (1958); *Chapman v. Metropolitan Life Ins. Co.*, 172 S. C. 250, 173 S. E. 801 (1934); *Tull v. Turley*, 36 S. W. (2d) 1101 (Tex. Civ. App. 1931); *Clucas v. Bank of Montclair*, 110 N. J. L. 394, 166 A. 311 (1933). Since Carter failed to carry his burden of proving Brock did not follow the owner's manual, he showed no breach of the duty of care, an essential element of his cause of action for negligent pretrip inspection of the trailer.

### B.

Carter's remaining specifications of negligence concerned Jordan's maintenance of the trailer. He alleged that Jordan (1) failed to maintain the trailer in proper working condition; (2) failed to follow the maintenance schedule set forth in the operator's manual; and (3) failed to establish and follow its own schedule of regular maintenance for its trailers.

The law required Jordan to exercise reasonable care to see that the trailer was in safe mechanical condition before operating it on the highway. However, the mere breaking of the cotter pin was not in itself sufficient to support an inference that Jordan breached its duty of care. *Watson v. Charleston Stevedoring Co.*, 141 S. C. 355, 139 S. E. 778 (1927); *cf. Grier v. Cornelius, supra* (mere failure of brakes not a violation of brake statute as a matter of law). The uncontradicted evidence showed that Jordan took the trailer to Equipment Maintenance for repaird seven times between January and May. The trailer was last serviced only four days before the accident.[3] There was no evidence that more frequent maintenance was necessary or that it would have prevented the accident.

Carter also alleged that Jordan's failure to follow the maintenance schedule set forth in the operator's manual was negligent. Assuming Jordan had a duty to

---

[3] Equipment Maintenance made repairs to the trailer's lights on the last servicing before the accident. The president of Equipment Maintenance testified that the wheel assembly, including the cotter pin, would be checked routinely with every maintenance or repair job, regardless of the nature of the repairs.

follow the manual and that it breached that duty, Carter still produced no evidence linking his injuries to this failure. In other words, he did not create a jury question on proximate cause.

"Proximate cause is the efficient or direct cause of an injury. Negligence is deemed to be the proximate cause of an injury when without such negligence, the injury ... could have been avoided." *Willis v. Floyd Brace Co., supra,* 279 S. C. at 461-462, 309 S. E. (2d) at 297-298; *accord Hughes v. The Children's Clinic, P.A.,* 269 S. C. 389, 237 S. E. (2d) 753 (1977).

There is no evidence to support the inference that, had Jordan followed the operator's manual, Carter's injury could have been avoided. The operator's manual says nothing about routine inspection or replacement of cotter pins. It does recommend inspecting the wheel bearings every 100,000 miles or whenever the brakes are relined. Of necessity, the cotter pin would be removed to service the wheel bearings or to work on the brakes.

The brakes were relined on January 12, 1983. There is no evidence that the trailer had been driven 100,000 miles between then and May 4, 1983. Likewise, there is no evidence that the brakes either were or needed to be serviced again before the accident. Consequently, had Jordan followed the operator's manual, no further inspection or maintenance would have been performed on the wheel assembly before the accident and no problem with the cotter pin would have been discovered or remedied. In other words, Jordan's failure to follow the manual made no difference to the failure of the cotter pin.

For the same reason, Carter failed to prove actionable negligence arising from Jordan's failure to establish and follow its own schedule of regular maintenance.[4] The trailer in question was serviced by Equipment Maintenance on April 30, 1983. Carter produced no evidence that a reasonable schedule of maintenance would have required any further work by a mechanic on or before May 4, 1983. Thus, he established no causal link between Jordan's allegedly inadequate maintenance schedule and his injuries.

[4] Jordan contends it had a policy of routinely servicing its vehicles. This fact was disputed at trial.

We conclude that Carter did not carry his burden of introducing proof to establish all the elements of actionable negligence against Jordan. Therefore, he was not entitled to go to the jury on the issue of Jordan's liability. In view of this disposition, we need not reach the remaining issues Jordan raises on appeal.

For the reasons stated, we affirm the judgment against Equipment Maintenance and reverse the judgment against Jordan.

Affirmed in part and reversed in part.

SHAW and CURETON, JJ., concur.