23340

BERKELEY ELECTRIC COOPERATIVE, INC., Appellant v. SOUTH CAROLINA PUBLIC SERVICE COMMISSION and the South Carolina Electric & Gas Co., Inc., Respondents.

(402 S.E. (2d) 674)

Supreme Court

16

*E. Crosby Lewis* and *Margaret B. Seymour* of *Lewis, Lide, Bruce & Potts, P.A.*, Columbia, and *John B. Williams*, Moncks Corner, *for appellant.*

*Belton T. Zeigler* of *Lewis, Babcock, Pleicones & Hawkins*, Columbia, *for respondent, South Carolina Elec. & Gas Co., Inc.*

*Sarena D. Burch* of *S.C. Public Service Com'n*, Columbia, *for respondent S.C. Public Service Com'n.*

*James M. Brailsford, III*, and *Frank R. Ellerbe, III* of *Robinson, McFadden & Moore, P.C.*, Columbia, *for amicus curiae, S.C. Municipal Ass'n.*

Heard Dec. 14, 1990.

Decided Feb. 4, 1991.

CHANDLER, Justice:

Berkeley Electric Cooperative, Inc. (Co-op) appeals an Order allowing Respondent, South Carolina Electric and Gas Co., Inc. (SCE&G), to provide electric service to a Hardee's restaurant, located on a parcel of property recently annexed to the town of Summerville.

We affirm.

## FACTS

In July, 1987, Summerville annexed an undeveloped parcel of land situate within 300 feet of Co-op's existing electric lines.[1] Thereafter, Hardee's owners, upon completion of the building, requested electric service from SCE&G. SCE&G, under an exclusive franchise agreement with the town of Summerville, contracted to supply Hardee's. Co-op then instituted this action, alleging that it was entitled to provide the service.

The Public Service Commission (PSC) affirmed SCE&G's right to continue supplying electricity. Circuit Court affirmed.

## ISSUES

The issues we address are:

1. May a municipally-franchised utility provide electric service in newly annexed portions of the municipality?
2. Did the PSC err in relying upon expert testimony relating to territorial assignments?

## DISCUSSION

### I. SERVICE RIGHTS

Co-op raises essentially two points. First, it contends that its "corridor rights" supersede any rights of SCE&G; second, that while a municipality may, *itself*, provide electric service within corporate limits, it may not *designate* a supplier by franchise. We disagree.

---

[1] This area is commonly referred to as a "corridor." *See*, S.C. Code Ann. § 58-27-620(1)(b) & (c) (1976).

## A. *Corridor Rights*

This case is governed by the Territorial Assignments Act (Act),[2] which reads in part:

> With respect to service *outside the corporate limits* of municipalities, electric suppliers shall have the rights and be subject to restrictions as follows:
> (1) Every electric supplier shall have the right to serve:
> (b) . . . all premises initially requiring electric service after July 1, 1969, which are located wholly within 300 feet of such electric supplier's lines as such lines exist on July 1, 1969.

S.C. Code Ann. § 58-27-620(1)(b) (1976) [Emphasis supplied].
Although Co-op's lines were in place on July 1, 1969, § 58-27-620 is not applicable as the premises in question, following annexation, were *within* corporate limits.

Act 431 of 1984, amending § 58-27-670, governs service in newly annexed areas, stating in part:

> Annexation may not be construed to increase, decrease, or affect any other right or responsibility a municipality, rural electric cooperative, or electrical utility may have with regard to supplying electric service *in areas assigned by the Public Service Commission* in accordance with Chapter 27 of Title 58. (Emphasis supplied.)

By its explicit terms, this section applies only to areas *assigned* by PSC.[3] Since PSC does not assign "corridor" areas, § 58-27-670 reserves no rights to Co-op.[4]

## B. *Municipally-Franchised Supplier*

We reject Co-op's claim that, while a municipality may, *itself*, provide electric service within corporate limits, it may not designate a supplier through a franchise agreement. Our holdings in *City of Abbeville v. Aiken Elec.*

---

[2] S.C. Code Ann. § 58-27-610 *et seq.* (1976).

[3] *See*, S.C. Code Ann. § 58-27-640 (1976).

[4] We are not unmindful that the first sentence of § 58-27-670 refers to areas "whether or not . . . assigned" by PSC. However, this sentence merely provides that newly annexed areas are subject to § 58-27-1360, which governs a municipality's acquisition of a supplier's property if it is furnishing electricity at the time of annexation. Here, Co-op has never supplied electricity to the annexed parcel. Therefore, we do not find the initial sentence of § 58-27-670 controlling.

*Co-op., Inc.*[5] and *Blue Ridge Elec. Co-op v. Combined Utility System of City of Easley*[6] are dispositive of this issue.

In *Abbeville*, we rejected a municipality's claim that it had the right to oust an existing electric supplier upon annexation. We stated:

> [A] franchisee possessing a valid PSC territorial assignment to serve an area which is subsequently annexed:
>
> 1. Is permitted to continue service in that area to those premises being served at the time of annexation;
> 2. *Is prohibited,* without prior consent of the municipality, *from extending or expanding service* in that area by the use of any streets, alleys, public property or ways after the date of annexation.

287 S.C. at 370-371, 338 S.E. (2d) at 836. (Emphasis supplied.)

In *Blue Ridge*, we addressed an assigned supplier's challenge to a municipal utility which provided electricity in a newly annexed area. There, we held that "a municipality may either consent to expanded service by the assigned supplier or itself serve new premises and customers within the assigned, annexed area." 297 S.C. at 289, 376 S.E. (2d) at 517.

The basic premise upon which *Abbeville* and *Blue Ridge* rest is a municipality's right of consent under S.C. Const. Art. VIII, § 15.[7] In *Blue Ridge*, we declined to interpret the Territorial Assignments Act, as amended by Act 431 of 1984, in a way violative of this right. We stated:

> Absent the option of municipal service to new premises and customers in assigned, annexed areas, the assigned supplier would possess, for all practical purposes, an exclusive territorial service right. Municipalities could not realistically deny consent to expanded service by these assigned suppliers; denying consent would be tantamount to denying property owners in the annexed area any electric service at all.

<hr />

[5] 287 S.C. 361, 338 S.E. (2d) 831 (1985).

[6] 297 S.C. 283, 376 S.E. (2d) 514 (1989).

[7] "No law shall be passed by the General Assembly granting the right to construct and operate in a public street or on public property a[n] ... electric plant ... or to use the streets for any other such facility, without first obtaining the consent of the governing body of the municipality in control ..."

297 S.C. at 289, 376 S.E. (2d) at 517-518.

Here, Co-op's contention that a municipally *franchised* utility should be distinguished from a municipally-*owned* utility effectually denies Summerville's right of consent, leaving Summerville with the sole alternative of permitting Co-op to provide the service. This would clearly violate *Abbeville* and *Blue Ridge, supra.*

Summerville has granted SCE&G its consent to serve the annexed area by virtue of the franchise agreement. Accordingly, Circuit Court correctly held that SCE&G may continue providing electric service to Hardee's.

## II. EXPERT TESTIMONY

Co-op next contends that PSC erroneously relied upon the testimony of Grover Croft, SCE&G's expert in the area of Territorial Assignments. We disagree.

Croft testified as to his interpretation of the Territorial Assignments Act, and the practical effect its application would have in certain situations.

PSC's Order states:

> The Commission does not take Mr. Croft's testimony concerning how the Territorial Assignments Act is applied as having any value beyond its function of allowing the Commission to verify the basis of the ultimate opinions he gives.

"The qualification of a witness as an expert in a particular field is within the sound discretion of the trial judge." *Smoak v. Liebherr-America, Inc.*, 281 S.C. 420, 422, 315 S.E. (2d) 116, 118 (1984). Where the expert's testimony is based upon facts sufficient to form the basis for an opinion, the trier of fact determines its probative value. *Id.*

PSC, which accorded only limited weight to Croft's testimony, was entitled to know the basis upon which his opinion rested. We find no abuse of discretion in the admission of his testimony.

Accordingly, the judgment below is affirmed.

HARWELL, Acting C.J., FINNEY, A.J., and JAMES E. MOORE, Acting Associate Justice, concur.

TOAL, J., not participating.