2243

James R. SMALL, Appellant v. PIONEER MACHINERY, INC., and Timberjack, Inc., Respondents.

(450 S.E. (2d) 609)

Court of Appeals

480

*J. Marvin Mullis, Jr.* and *Frank A. Barton,* Columbia, *for appellant.*

*Rebecca Laffitte, C. Mitchell Brown* and *William C. Wood, Jr., Nelson, Mullins, Riley & Scarborough,* Columbia, and *Margaret C. Kelsey,* Milwaukee, WI, *for respondents.*

Heard Oct. 4, 1994.

Decided Oct. 24, 1994; Reh. Den. Dec. 2, 1994.

GOOLSBY, Judge:

The questions on appeal in this action brought by James R. Small against Pioneer Machinery, Inc. and Timberjack, Inc. concern the exclusion of an expert witness's testimony, the sufficiency of the evidence as to strict liability, negligence, and breach of warranty, and the affirmative defenses of contributory negligence, assumption of risk, and intervening third-party negligence. The trial court directed a verdict in favor of Pioneer Machinery and Timberjack. Small appeals. We reverse and remand.

Small's complaint alleges his chain saw became stuck in a tree he was cutting on December 8, 1988; Small asked a co-worker who was operating a log skidder manufactured and distributed by Pioneer Machinery and Timberjack to push against the tree with the skidder until Small could remove the

chain saw; the throttle stuck because of a design defect; the stuck throttle caused the skidder to surge forward out of control and to push a tree over onto him; and he was injured as a result.

I.

We first address the related questions of whether the trial court erred in excluding the testimony of Small's expert witness and in directing a verdict as to all causes of action on the ground of insufficiency of the evidence. Basic to the trial court's exclusion of the testimony of Small's expert witness and to its direction of a verdict on the ground of insufficiency of the evidence was the trial court's view that the evidence showed only that the tree had begun to fall before the skidder's throttle stuck.

When considering whether to grant a party's motion for a directed verdict, the trial court, in a law case, must view the evidence and all inferences that may be reasonably drawn therefrom in the light most favorable to the nonmoving party. *Olin Mathieson Chem. Corp. v. Planters Corp.*, 236 S.C. 318, 114 S.E. (2d) 321 (1960); *May v. Hopkinson*, 289 S.C. 549, 347 S.E. (2d) 508 (Ct. App. 1986). The trial court must eliminate from its consideration all evidence contrary to or in conflict with the evidence favorable to the nonmoving party and give to the nonmoving party every favorable inference that the facts reasonably suggest. *Collins & Sons Fine Jewelry, Inc., v. Carolina Safety Sys., Inc.*, 296 S.C. 219, 371 S.E. (2d) 539 (Ct. App. 1988).

We turn to the evidence with these rules in mind.

Small's co-worker, Sylvester Harris, testified during direct-examination he had been having problems with the throttle sticking on a log skidder; he had been operating the skidder for some time prior to December 8, 1988; he had previously observed debris around the skidder's throttle linkage and had cleaned out the area around the throttle before work each morning; chain saws frequently become embedded in trees and logging workers often use skidders to free them; Small's chain saw got stuck in a tree Small was cutting; he tried to push the tree with the skidder far enough to enable Small to remove his chain saw; he was pressing the gas pedal and releasing the clutch to make the skidder move

forward; the throttle suddenly stuck as he pushed the tree and the skidder, because of the stuck throttle, pushed the tree too hard, causing the tree to bolt up, fall into another tree, and break limbs out of the other tree; and a limb from the other tree fell and struck Small as he tried to get out of the way, severely injuring Small.[1] Harris further testified he experienced

---

[1] The transcript reflects Harris gave the following testimony on direct examination:

Q. [Mr. Mullis]: [H]ow long had you been driving that particular skidder when this accident happened on . . . December [8]; [19]88?
A. About two months.
Q. Now, had you had any particular problem in the operation of that skidder?
A. The throttle would stick on it.
. . . .
THE COURT: When was the first time you noticed the throttle sticking on that particular machine, after you started riding it?
[A.] The first two weeks that I started operating it.
. . . .
Q. [Mr. Mullis]: Okay. Now, did you figure out what was causing it to lock down?
A. Not at first I didn't. But later on I found out that it was debris, trash and stuff around the area.
. . . .
Q. Okay. How did you determine that debris was causing this?
A. I removed the plate and you could see debris all around on the bottom and on the sides of the throttle linkage.
. . . .
Q. Okay. Now, how often did you start removing the debris when you figured out that's what was causing the sticking problem with the throttle?
A. I used to would clean it out every morning before I started to work.
. . . .
Q. Would you tell the members of the jury what [Small] first did to get your attention?
A. He threw up his hand and motioned for me to come over to where he was at.
Q. Did you?
A. Yes, sir.
Q. When you got over to where he was at, what was the problem?
A. He had his chain saw hung into a tree.
Q. Now, is that an unusual occurrence in a log harvesting operation?
A. No, sir.
Q. How many time a day does one of the people get their saw caught in a tree?
A. Lots of times.
Q. When the saw is caught in the tree how do you go about getting it out?

A. You take the skidder blade, put it up against it, push the tree over so they can free the saw.

Q. Okay. And how far do you try to push the tree?

A. You either push it all the way over, or just push it far enough where he can pull it out. . . .

Q. What did you attempt to do on this particular day?

A. Just push the tree far enough to where he can get his saw out.

. . . .

Q. Have you ever been on an operation where they did not release the saw in that manner?

A. No, sir.

Q. Now, you came up to the tree and what did you do?

A. I came up to the tree, I put the point of the blade—the left-hand point of the blade up against the center of the tree and waited for [Small] to move back into the area so he can get his saw. When I started releasing the clutch—you have to mash the gas pedal to make the skidder go forward—when I was mashing the gas pedal on it and releasing the clutch I was pushing the tree. When I pushed the tree the throttle stuck on it as I turned the clutch loose on it—

Q. Stuck in what position?

A. Down position.

Q. Okay. How fast was that making the motor run?

A. It was running about half wide open.

. . . .

Q. Did you release the gas pedal, pull your foot back off of it?

A. Yes, sir.

Q. And did the motor slow down or quit running?

A. No, sir, it sure didn't.

Q. What effect did that have on the tree?

A. It pushed the tree too hard and it throwed it up.

Q. Okay. Would you have pushed the tree that hard if the throttle had not stuck?

A. No, sir, I wouldn't have pushed it that hard.

Q. What happened when you pushed the tree?

A. The tree fell into another one and the limbs broke out of it, and I hollered for [Small] to run because I saw the limb when it was coming down out the tree.

. . . .

Q. Now, what did you next observe about [Small]?

A. He was trying to get out of the way and when he turned around and looked, it was too late, the limb was already on him.

Q. Okay. And what happened after it hit him?

A. He fell onto the ground.

Q. And what condition was he in?

A. His arms was all broken up, messed up, they was mangled, all messed up, and his leg was folded up on him. He was hollering and he was in pain. He was hurting.

. . . .

. . . I seen he was very badly hurt. . . .

no more problems with the skidder that day,[2] but he found debris in the throttle linkage when he checked it the next morning.[3]

We think fair inferences from Harris's testimony are that the tree did not begin to fall until after the skidder's throttle stuck and that there was debris in the throttle mechanism.

Small offered a licensed professional engineer as an expert witness on the questions of causation and the throttle mechanism's design.[4] The trial court, however, refused to allow him to express his opinion on either subject because, as we noted

---

During cross-examination, Harris testified as follows:

Q. Okay. So when you start releasing the clutch and mashing the throttle, he's standing next to that tree?
A. Yes, ma'am.
Q. Okay. What happened?
A. The tree—I pushed the tree enough and he freed his saw. I was watching the tree and trying to watch him at the same time and the throttle stuck and bumped the tree too hard when [Small] was backing up out of the way of the tire. It bumped the tree too hard and throwed. . . . it up into another big tree and that's when I seen the limb fall out the tree and slid directly down the tree and—
Q. And hit [Small].
A. —Hit [Small] in the back.

[2] Harris testified on cross-examination:

Q. [Ms. Kelsey]: And Mr. Harris, the throttle didn't stick again that day, did it?
A. Not that day it didn't.

[3] Harris testified on direct-examination:

Q. [Mr. Mullis]: Did you, that afternoon, check the skidder to see how much debris was in the area around the throttle control?
A. No, sir, because I was so upset from the condition that [Small] was in, I didn't even think to look.
Q. Did you check it the next morning?
A. Yes, sir.
Q. And what did you find in the area around the throttle control?
A. Debris.
Q How much debris?
A. Lots of it.

[4] Small proffered out of the presence of the jury the following testimony of his expert, Robert Taylor:

Q. [Mr. Barton]: [D]o you have an opinion to a reasonable degree of engineering certainty as to what caused this accident to happen?
A. Yes, I do.

above, he viewed Harris as testifying only that the tree was falling before the throttle stuck.[5]

Q. Okay. What is that opinion?

. . . .

A. . . . That as the skidder was pushing the tree the throttle stuck. At some stage Mr. Harris realized that the throttle stuck. His indications are somewhat varied and confusing as to exactly when that caused it, but the throttle actually stuck early in the process when the machine—before the tree had passed its point of equilibrium. He may not have fully recognized that, or he may have, before the tree passed its point of equilibrium. The throttle, when it sticks—it sticks when it's put into a certain position and something makes it stick, it is then stuck. It doesn't become stuck normally with it in that position. It's a moving into a certain position of, I call it power, that it doesn't move back from normally. It's not that it's in position X and some three seconds later it becomes stuck when it was not stuck before in position X.

. . . .

It was most probably debris [that caused the throttle to stick].

. . . .

Most probably from the—I call it holes—fist [sic] on the top of the general hood area around the air filter and secondly through unprotected places in the, you might call it the floorboard.

. . . .

Q. . . . Do you have an opinion to a reasonable degree of engineering certainty as to whether or not the design of this log skidder . . . is an unreasonably dangerous design?

A. Yes, I do.

Q. And to a reasonable degree of engineering certainty, what is that opinion?

A. That in this area of debris protection, with respect to the throttle linkage—and I'm not referring to debris protection with respect to the engine compartment itself or the driver—but that this area allows debris to go from the outside into the throttle linkage area and it is—would be very reasonably easy to protect that.

Q. Okay. Do you have an opinion to a reasonable degree of engineering certainty as to whether or not that design . . . is an unreasonably dangerous design?

A. Yes, I do. I thought that's what I . . .

Q. Is that an unreasonably dangerous design?

A. Yes, from that perspective. I'm not addressing other perspectives—I mean other parts of the equipment. That sort of pathway, vertical pathway for substantial debris into the throttle linkage area.

Q. In your opinion did that design contribute to the cause of this accident?

A. I believe it did, yes.

[5] Harris testified during cross-examination:

Q. [Ms. Kelsey]: Did you see him get his saw out?

■ The question of whether to admit or exclude testimony of an expert witness is a matter largely left to the discretion of the trial court; however, the exercise of this discretion will be reversed where an abuse of discretion has occurred. *Creed v. City of Columbia,* — S.C. —, 426 S.E. (2d) 785 (1993). Here, the trial court abused its discretion because there was evidence, albeit contradictory, that supported the formulation of the expert witness's opinion regarding causation and there was evidence that supported the expert witness's opinion regarding defective design.

A Did I see him get his saw out?

Q. Yes.

A. Yes, ma'am.

Q. Was that before or after the throttle stuck?

A. Before or after the throttle stuck?

Q. That's right.

A. Before.

Q. Before the throttle stuck, you saw Small with his chain saw in his hand fully out of that tree?

A. Yes, ma'am.

Q. Why didn't you push the clutch?

A. Well the tree was already falling then and it had bumped it again. See, I had pushed it enough and it was still going the same way. It would have fell anyhow.

Q. It was going to go whether that throttle stuck or not?

A. The tree?

Q. Yeah.

A. Yes, ma'am. It was going, I mean. Going in that direction.

Q. And then the throttle stuck and it just pushed it a little harder; that's what you're telling me?

A. It bumped it too hard.

Q. But that tree was gone whether that throttle stuck or not?

A. Yes, it was straight up and it—and the wind was blowing that day.

Q. After you saw [Small] with his chain saw in his hand, the reason you didn't push the clutch in was because that tree was already going down; isn't that right?

A. No.

Q. I thought that's what you just said?

A. Yeah, that's what I'm saying. When I saw—when I glimpsed out of the corner of the skidder and saw [Small] with the saw, the tree was sitting straight up and it had a little lean to it but it looked—from out the operator's seat of the skidder, it looked like it was sitting straight up.

. . . .

Q. And when it started moving forward you're pushing that [tree]?

A. Yes, ma'am.

Q. Because you dozer blade is pushing into the tree.

A. Right.

■ It is not unusual, of course, for a case to have contradictory evidence and inconsistent testimony from a witness. In a law case tried before a jury, it is the jury that must decide what part of the witness's testimony it wants to believe and what part it wants to disbelieve. *Berkeley Elec. Coop., Inc. v. South Carolina Pub. Serv. Comm'n*, 304 S.C. 15, 402 S.E. (2d) 674 (1991); *Smoak v. Liebherr-America, Inc.*, 281 S.C. 420, 315 S.E. (2d) 116 (1984).

The expert witness's testimony, then, should have been admitted. *See Carter v. R.L Jordan Oil Co.*, 294 S.C. 435, 441, 365 S.E. (2d) 324, 328 (Ct. App. 1988), *rev'd on other grounds,*

---

Q. And did you take your foot off the throttle for some reason?

A. During the time that I was pushing the tree?

Q Yeah.

A. Yes.

Q. What for?

A. Did I take it off? I took my foot off after the tree had started to fall.

Q. Okay. Because before that, you wanted your foot on the throttle because that was your—you were controlling this with the throttle and the clutch?

A. Right. Exactly.

Q. You had your foot right there on that throttle pedal, right?

A. Yes, ma'am.

Q. And when the tree started to fall you pulled your foot off and then what?

A. That's when it was stuck.

Q. Then you realized it was stuck?

A. That's when I realized it was stuck.

Harris testified on redirect-examination:

Q. [Mr. Mullis]: Okay. Well, why didn't you push the clutch in when the throttle stuck to keep it from pushing the tree on over?

A. I was watching [Small] at the same time is the reason I didn't push it all the way, because he wasn't all the way clear.

Q. What I'm saying is, why didn't you push the clutch in when you figured out the throttle was stuck down?

A. Oh, I did push the clutch in when I figured the throttle was stuck. I released it first.

Q. Okay. You released the clutch first—

A. Released the throttle.

Q. —Then you—

A. I released—

Q. —figured out the throttle stuck, then what happened? Were you able to push the clutch in in time?

A. Yeah. When I pushed the clutch in—no, it was not enough time then because the tree was already falling.

299 S.C. 439, 385 S.E. (2d) 820 (1989) ("An expert is given wide latitude in determining the basis of his testimony."). Although contradictory evidence lay at the foundation of the expert witness's opinion on the question of causation, this was a matter for cross-examination. The jury could have either accepted or rejected the expert witness's opinions, depending on its view of the evidence. *Cf. id.* 294 S.C. at 442, 365 S.E. (2d) at 328 ("[An] isolated statement on cross examination went to the credibility and weight of [the expert's] opinion, not to its admissibility.").

Moreover, that the expert witness's opinion on the question of causation was based on contradictory evidence provided no basis at all for the exclusion of the expert witness's opinion on the question of defective design. The question of whether the tree began to fall before or after the skidder's throttle stuck had nothing to do with the skidder's design.

The exclusion of the proffered testimony clearly prejudiced Small's case. Harris's testimony concerning how the events that caused Small's injuries unfolded and the improperly excluded expert witness's opinions on the questions of causation and design provided, when viewed in the light most favorable to Small, sufficient evidence to withstand the directed verdict motion on each of the causes of action to the extent the motion was grounded on insufficiency of the evidence.

## II.

We next address the question of whether the trial court erred in directing a verdict on the grounds of contributory negligence, assumption of risk, and intervening third-party negligence in favor of Timberjack on all causes of action and on the grounds of assumption of risk and intervening third-party negligence in favor of Pioneer Machinery on the causes of action for strict liability and for breach of warranty. We hold it did so.

The defenses of contributory negligence and assumption of risk ordinarily present questions of fact for the jury and only rarely become questions of law for the court to determine. *Wallace v. Owens-Illinois, Inc.*, 300 S.C. 518, 389 S.E. (2d) 155 (Ct. App. 1989). The same thing may be said of the defense of intervening third-party negligence. *Johnson v. Finney*, 246 S.C. 366, 143 S.E. (2d) 722 (1965); *Bal-*

*lou v. Sigma Nu Gen. Fraternity*, 291 S.C. 140, 352 S.E. (2d) 488 (Ct. App. 1986).

■ A trial court must direct a defense verdict based on contributory negligence where the only reasonable inference to be drawn from the evidence is that the plaintiff's negligence was the direct and proximate cause of the plaintiff's injury. *Burgess Brogdon, Inc. v. Lake*, 288 S.C. 16, 339 S.E. (2d) 507 (1986); *Madden v. Cox*, 284 S.C. 574, 328 S.E. (2d) 108 (Ct. App. 1985). If, however, the evidence of contributory negligence is "conflicting or susceptible to different reasonable inferences, the issue is for the jury to determine." *Wallace*, 300 S.C. at 523, 389 S.E. (2d) at 158.

A trial court may further find "the plaintiff assumed the risk as a matter of law only if the sole reasonable inference to be drawn from the evidence is that the plaintiff freely and voluntarily exposed himself to a known danger which he understood and appreciated." *Id.*

■ In determining the question of whether a plaintiff was contributorily negligent or assumed the risk as a matter of law, the trial court must view the evidence and all its reasonable inferences in the light most favorable to the plaintiff. *Wallace*, 300 S.C. 518, 389 S.E. (2d) 155.

The trial court did not give the precise reasons why it directed a verdict on the affirmative defenses of contributory negligence and assumption of risk. Pioneer Machinery and Timberjack, however, mention in their brief Small's failure to properly cut the tree, a failure that led to the chain saw's becoming lodged in the tree, and to Small's failure to prepare an escape route around the tree just prior to Harris's using the skidder to dislodge the chain saw.

■ Regarding contributory negligence, the question of whether the direct and proximate cause of Small's injuries was Small's miscutting of the tree or his not preparing an escape route around it was for the jury to determine, given the circumstances of this case and particularly the suggestion in the evidence that the limb that injured Small did not come from the tree that held Small's chain saw but from a tree that it fell against.

■ Regarding assumption of risk, the question of whether Small voluntarily encountered the risk that the skidder's throttle would stick while he attempted to extri-

cate his chain saw from the tree and would cause the skidder to push the tree against another one and knock limbs from the other tree down onto him and whether he did so with an understanding and appreciation of both the nature and extent of this risk was likewise a question for the jury, given the circumstances of this case and particularly the absence of any evidence that Small either had prior knowledge that Harris was having trouble with the skidder or appreciated the danger posed by a sticking throttle on a skidder.

In directing a defense verdict on the ground of intervening third-party negligence, the trial court apparently viewed the negligent acts and omissions of Harris as the sole proximate cause of Small's injuries. In their brief, Pioneer Machinery and Timberjack point to Harris's operation of the skidder "with full knowledge that its brakes were not operable," to Harris's "push[ing] the tree over by holding down the [skidder's] accelerator . . . too long," to Harris's "negligently block[ing] plaintiff's escape route and proceed[ing] to push the tree without ensuring that such a route existed," and to Harris's using "the skidder to perform what was a 'delicate' or 'tricky' maneuver with full knowledge that the throttle had stuck earlier that morning."

A third party's intervening acts of negligence, however, do not break the causal chain if the acts are foreseeable. *E.g.*, *Young v. Tide Craft, Inc.*, 270 S.C. 453, 242 S.E. (2d) 671 (1978).

Here, Harris was using the skidder in an attempt to free Small's chain saw when the accident occurred. Because evidence indicated skidders are regularly used to perform this function, it is clearly foreseeable that a defectively designed throttle mechanism could cause an accident and injury like that Small suffered, if, as the evidence and its reasonable inferences suggest when viewed in the light most favorable to Small, the skidder's throttle suddenly stuck before the tree began to fall and the stuck throttle, not some other force, caused the tree, as Small regained possession of his chain saw, to be pushed further than Harris intended.

The question of whether a defectively designed throttle mechanism or Harris's intervening negligent acts proximately caused Small's injuries was, therefore, one for the jury to decide.

Reversed and remanded.

CURETON and CONNOR, JJ., concur.