550 S.E.2d 910

**Charles W. BAILEY, Respondent,**

v.

**Ralph W. SEGARS, Jr., Appellant.**

**No. 3370.**

Court of Appeals of South Carolina.

Heard Dec. 13, 2000.

Decided July 16, 2001.

Rehearing Denied Aug. 23, 2001.

Louis D. Nettles, of Nettles, McBride & Hoffmeyer, of Florence, for appellant.

Charles E. Carpenter, Jr., and S. Elizabeth Brosnan, both of Richardson, Plowden, Carpenter & Robinson, of Columbia; and Paul V. Cannarella, of Hartsville, for respondent.

STILWELL, Judge:

This case involves an automobile-pedestrian collision resulting in a jury verdict in favor of Bailey. Segars appeals, and we affirm.

## FACTS

On October 8, 1996, at approximately 6:45 a.m., Charles Bailey was driving westbound toward Hartsville on Highway 151. The highway has four lanes, with two lanes running in each direction, and is separated by a paved median. Bailey

was in the left lane, the one closest to the median, returning home from a hospital where he had visited his father. His wife Doris followed him in another car. Tropical storm Josephine had just passed through the area, and it was dark, rainy, windy, and visibility was poor.

That morning there were two accidents. Tamara Sabari was traveling eastbound toward Darlington when she lost control of her car, crossed the median, and collided with a tractor-trailer in the left lane of westbound traffic. Her car came to rest diagonally in the left lane. Bailey saw Sabari standing in the median waving her hands and pulled his white Chevrolet Suburban into the median two to three car lengths ahead of Sabari's car. Bailey left his headlights on but did not turn on his emergency lights. He proceeded to walk back toward Sabari carrying a flashlight.

Like Sabari, Segars was traveling east toward Darlington in the left lane on his way to work. Segars saw headlights and what he thought was an accident some distance ahead [1] but remained in the left lane because he was concerned about the amount of water in the right lane creating the potential for hydroplaning. As Bailey walked toward Sabari, a car traveling westbound in the left lane swerved into the median to avoid hitting Sabari's car. Bailey turned to avoid being hit by that car and ran into the left lane of eastbound traffic, where Segars struck him with his car.

The force of the accident sent Bailey 100 to 150 feet down the road. He suffered a broken leg, broken neck, broken ribs, and collapsed lungs. Bailey did not know what hit him and has no recollection of the accident.

The force of the collision dented Segars's front bumper, damaged the hood, crushed the windshield, and buckled the car's roof. Segars testified that whatever hit his car appeared so quickly he had no time to respond. Thinking he had hit some flying debris, Segars did not stop immediately but continued driving. He eventually stopped at a gas station two miles down the road because rain was coming into his car

1. Segars testified inconclusively about the distance but, regardless of the actual distance, it is clear he saw an accident on the road ahead of him. One other witness also testified he saw what appeared to be an accident on the road ahead of him.

through the shattered windshield and he was bleeding. He returned to the accident scene ten to twenty minutes later and saw Bailey lying on the road.

Bailey's expert witness testified that in a vehicle-pedestrian collision the greater the speed of the vehicle the higher the pedestrian's point of impact thereon. Based on the damage to Segars's car, the expert witness concluded Segars was driving between forty and sixty miles per hour at the time of impact. The posted speed limit on Highway 151 was fifty-five miles per hour, and Segars testified he was driving forty to forty-five miles per hour. Although Segars testified he slowed down when he saw the lights of Bailey's vehicle, there were no signs of braking before, during, or after impact.

Bailey initially brought this negligence action against Segars, Sabari, Doe No. 1, the driver of the tractor trailer, and Doe No. 2, the driver of the car that swerved into the median. Claims against all defendants other than Segars were resolved prior to trial.

Segars moved for a directed verdict at the close of Bailey's case and at the close of his own case, arguing Bailey failed to establish actual negligence sufficient to make a finding of proximate cause. The trial court denied these motions. The jury rendered a verdict finding Segars 55% negligent, Bailey 45% negligent, and awarded Bailey $525,000 in damages. The award was initially reduced by 45% to $288,750 and later to $263,750 because of a settlement with one of the other defendants. Segars's motion for judgment notwithstanding the verdict (JNOV) was denied.

## DISCUSSION

### I. Preservation of Error

As a threshold issue, Bailey argues Segars's issues on appeal are procedurally barred because they were not ruled upon by the trial court, and no Rule 59(e), SCRCP motion was filed. The arguments Segars made for the directed verdict motions, as well as the court's denial of the motions, are included in the record on appeal. Further, Segars raised several grounds in the motion for JNOV, a hearing was held, and the motion was denied in a form order, stating, "Post trial motion by Defendant are [sic] denied." Bailey contends be-

cause the trial judge did not explicitly rule on the issues raised in Segars's JNOV motion and because Segars did not make a Rule 59(e) motion to obtain a ruling, the issues Segars raises on appeal are procedurally barred. To support his argument, Bailey cites *Vespazianni v. McAlister*, 307 S.C. 411, 415 S.E.2d 427 (Ct.App.1992). In that case, a motion for judgment on the pleadings was granted in a form order with no reason given for the decision. *Id.* at 412, 415 S.E.2d at 428. The argument on appeal was that the court failed to rule on certain matters. *Id.* at 413, 415 S.E.2d at 428. In addition to noting the record on appeal did not contain the proceedings before the trial court, we stated if issues were raised to the lower court and not ruled upon, a Rule 59(e), SCRCP motion to amend the judgment was necessary to preserve the issue for appellate review. *Id.*

*Vespazianni* is factually distinguishable from the case at hand. Here, we have a complete record containing the motion for JNOV and memorandum in support thereof, the transcript of the hearing on the post-trial motion, and the trial court's order denying the motion. Only the last of these items was available to this court in *Vespazianni*.

■ Post-trial motions are not necessary to preserve issues that have been ruled upon at trial; they are used to preserve those that have been raised to the trial court but not ruled upon. *Wilder Corp. v. Wilke*, 330 S.C. 71, 77, 497 S.E.2d 731, 734 (1998); *see also Hubbard v. Rowe*, 192 S.C. 12, 19, 5 S.E.2d 187, 189 (1939) ("In matters of appeal, so far as it appears, all that this Court has ever required is that the questions presented for its decision must first have been fairly and properly raised in the lower Court and passed upon by that Court."). The record on appeal in this case is sufficient for our review.

## II. Directed Verdict and JNOV

■ Segars argues the trial court erred in failing to grant his motions for directed verdict and JNOV because Bailey failed to prove actionable negligence by Segars proximately caused the accident. We disagree.

In ruling on motions for directed verdict or judgment notwithstanding the verdict, the trial court is required to view the evidence and the inferences that reasonably can be

drawn therefrom in the light most favorable to the party opposing the motions. The trial court must deny the motions when the evidence yields more than one inference or its inference is in doubt. [The appellate court] will reverse the trial court only when there is no evidence to support the ruling below.

*Steinke v. S.C. Dep't of Labor, Licensing & Regulation,* 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999); *see also Hopson v. Clary,* 321 S.C. 312, 314, 468 S.E.2d 305, 307 (Ct.App.1996) (noting if the evidence taken as a whole is susceptible of only one reasonable inference, no jury issue is created and the directed verdict motion is properly granted).

■ To establish a cause of action for negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damages proximately resulting from the breach of duty. *Bloom v. Ravoira,* 339 S.C. 417, 422, 529 S.E.2d 710, 712 (2000).

■ "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Bishop v. S.C. Dep't of Mental Health,* 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998). The duty of care is that standard of conduct the law requires of an actor to protect others against the risk of harm from his actions. *Carter v. R.L. Jordan Oil Co.,* 294 S.C. 435, 444, 365 S.E.2d 324, 329 (Ct.App.1988), *rev'd on other grounds,* 299 S.C. 439, 385 S.E.2d 820 (1989). A duty of care arises only with respect to a danger apparent to one in the actor's position before the harm occurs. *Carter,* 294 S.C. at 444, 365 S.E.2d at 329.

■ "A breach of duty exists when it is foreseeable that one's conduct may likely injure the person to whom the duty is owed." *Vinson v. Hartley,* 324 S.C. 389, 400, 477 S.E.2d 715, 720 (Ct.App.1996). A negligent act or omission proximately causes an injury if, in a natural and continuous sequence of events, it produces the injury, and without it, the injury would not have occurred. *Crolley v. Hutchins,* 300 S.C. 355, 357, 387 S.E.2d 716, 717 (Ct.App.1989).

■ Negligence is not actionable unless it proximately causes the plaintiff's injuries. *Bishop,* 331 S.C. at 88, 502 S.E.2d at 83. The court in *Bramlette v. Charter–Medical–Columbia* stated:

Proximate cause requires proof of (1) causation in fact and (2) legal cause. Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. Legal cause is proved by establishing foreseeability. Although foreseeability of some injury from an act or omission is a prerequisite to establishing proximate cause, . . . the plaintiff need not prove that the actor should have contemplated the particular event which occurred, . . . . The defendant may be held liable for anything which appears to have been a natural and probable consequence of his negligence. A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence.

302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990) (citations omitted); *see also Hubbard v. Taylor,* 339 S.C. 582, 589, 529 S.E.2d 549, 552 (Ct.App.2000) (noting legal cause is proved "if the defendant should have foreseen that his negligence would probably cause injury to someone").

 Ordinarily, the question of proximate cause is one of fact for the jury. *Vinson,* 324 S.C. at 402, 477 S.E.2d at 721. The trial court's sole function regarding the issue is to determine whether particular conclusions are the only reasonable inferences that can be drawn from the evidence. *Id.* Only in rare or exceptional cases may the issue of proximate cause be decided as a matter of law. *Ballou v. Sigma Nu Gen. Fraternity,* 291 S.C. 140, 147, 352 S.E.2d 488, 493 (Ct.App. 1986). If there is a fair difference of opinion regarding whose act proximately caused the injury, then the question of proximate cause must be submitted to the jury. *Id.* at 147–48, 352 S.E.2d at 493. Under South Carolina's doctrine of comparative negligence, a plaintiff may only recover damages if his own negligence is not greater than that of the defendant. *Bloom,* 339 S.C. at 422, 529 S.E.2d at 712–13. Ordinarily, comparing the plaintiff's negligence with the defendant's is a question of fact for the jury to decide. *Id.* at 422, 529 S.E.2d at 713.

 Viewing the evidence in the light most favorable to Bailey, we conclude the court properly denied Segars's motions for directed verdict and JNOV. First, Segars owed a duty of care to protect others from the risk of harm based on the weather conditions. It was dark, rainy, and windy, due to

tropical storm Josephine, and water tended to accumulate in the right lane of Highway 151. Visibility was obviously poor, and even Segars testified the weather conditions were "terrible." Further, Segars saw headlights and what appeared to be an accident on the road ahead of him. Although Segars stated he was keeping a proper lookout, he testified he did not see Bailey's car even though it was a large sport-utility vehicle. The potential for pedestrians and emergency personnel to be near the scene of an accident, and the danger of hitting them, should have been apparent to Segars. Thus, he owed a legal duty of care to Bailey to drive cautiously under these conditions.

Second, viewed in the light most favorable to Bailey, there is evidence that Segars breached his duty of care in one or more ways. First, although Segars testified he was concerned about the amount of water in the right lane, no cars were beside, in front of, or behind him, and he made no effort to slow down or to change lanes. No evidence exists that Segars slowed even after the collision. The expert witness estimated Segars's speed at forty to sixty miles an hour, while Segars himself testified to driving between forty and forty-five. Although the posted speed limit was fifty-five miles per hour, the jury could infer from the evidence that under the circumstances Segars was driving too fast for conditions. Segars appears to argue that the speed of his vehicle was not a proximate cause of the collision because he had a legal right to occupy the portion of the highway on which he was traveling. However, there is sufficient evidence to support a conclusion that Segars's speed contributed to the accident, and we cannot as a matter of law rule out speed as the proximate cause. *See Clark v. Cantrell,* 332 S.C. 433, 444, 504 S.E.2d 605, 611 (Ct.App.1998). Additionally, the evidence of Segars's failure to keep a proper lookout under the prevailing circumstances precludes us from denying liability as a matter of law. Segars's failure to reduce his speed and keep a proper lookout, despite his awareness of the weather conditions and the circumstances ahead of him, are evidence of negligence that, in a natural and continuous sequence of events, resulted in the accident.

Finally, on the issue of proximate cause, the evidence is sufficient for the jury to have found that "but for" Segars's

failure to reduce his speed, keep a proper lookout, and keep his car under control, he would not have hit Bailey. Segars should have foreseen that someone near the accident could be injured. His admitted concern about the possibility of hydroplaning based upon a previous similar experience is further evidence from which the jury could reasonably have concluded that Segars was driving too fast for conditions. Thus, taken in the light most favorable to Bailey, there is evidence that causation in fact is present in this case.

Evidence of legal cause was also shown, because Bailey's injuries were a natural and probable consequence of Segars's dereliction. Therefore, there being adequate evidence of both causation in fact and legal cause, the jury's finding that Segars's negligence proximately caused Bailey's injuries is justified.

The question of proximate cause and comparison of the plaintiff's negligence with that of the defendant are generally questions of fact for the jury. The jury found Bailey 45% at fault and Segars 55% at fault. The evidence in this case is not susceptible of only one reasonable inference, and thus, the motions for directed verdict and JNOV were properly denied.

For the foregoing reasons, the judgment of the trial court is **AFFIRMED.**

HEARN, C.J., and ANDERSON, J., concur.