**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Flatiron Constructors, Inc., Appellant,

v.

TranSystems Corporation, Respondent.

Appellate Case No. 2024-000171

_____

Appeal From Horry County
Kristi F. Curtis, Circuit Court Judge

_____

Unpublished Opinion No. 2025-UP-416
Heard October 8, 2025 – Filed December 10, 2025

_____

**REVERSED AND REMANDED**

_____

Kenneth Jay Anthony, of Anthony Law, LLC, and Mason A. Goldsmith, Jr., of Elmore Goldsmith Kelley & deHoll, P.A., both of Greenville; and Robert Cimmino, Carter B. Reid, and Hanna Lee Blake, all of McLean, Virginia, all for Appellant.

Charles Daniel Atkinson and Michael B.T. Wilkes, both of Wilkes Atkinson & Joyner, LLC, of Spartanburg; and James Alexander Joyner, of Wilkes Atkinson & Joyner, LLC, of Charleston, all for Respondent.

_____

**PER CURIAM:** Flatiron Constructors, Inc. (Flatiron) appeals the trial court's grant of summary judgment on its claim for professional negligence against TranSystems Corporation (TSC). Flatiron sued TSC for negligent supervision and design of a parkway construction project in Horry County (the Project), claiming TSC's actions caused a delay in the Project and financial loss to Flatiron. On appeal, Flatiron claims the trial court erred in granting summary judgment because TSC failed to meet its initial burden of showing the "absence of evidence of a genuine issue of material fact" regarding its special relationship with Flatiron. It alternatively argues the trial court erred because Flatiron presented evidence demonstrating a genuine issue of material fact regarding their special relationship. Flatiron further argues the trial court erred by (1) prematurely dismissing Flatiron's additional claims before discovery was complete and (2) making factual findings regarding agency that were improper, unnecessary, and unfairly prejudicial. We reverse the grant of summary judgment and remand to the trial court.

1. We hold the trial court erred in granting summary judgment because there is a genuine issue of material fact as to whether there was a special relationship between the parties such that TSC owed Flatiron a duty. *See Town of Hollywood v. Floyd*, 403 S.C. 466, 477, 744 S.E.2d 161, 166 (2013) ("Summary judgment is proper if, viewing the evidence in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law."); *Thompkins v. Festival Ctr. Grp. I*, 306 S.C. 193, 195-96, 410 S.E.2d 593, 594 (Ct. App. 1991) (holding that when a party makes a motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial" (quoting Rule 56(e), SCRCP)). We find further inquiry into the facts is necessary to determine the extent of the parties' relationship.

Based on *Tommy L. Griffin Plumbing and Heating Co. v. Jordan, Jones, & Goulding, Inc.*[1] and *Cullum Mechanical Construction, Inc. v. South Carolina Baptist Hospital*[2], we must consider all of the facts and circumstances in determining whether a special relationship exists. *See Tommy L. Griffin*, 320 S.C. at 55-56, 463 S.E.2d at 89 ("Whether such a duty exists will depend on the facts and circumstances of each case."); *Cullum*, 344 S.C. at 433, 544 S.E.2d at 842 (explaining "it is a factual issue [as to] whether these circumstances give rise to a

---

[1] 320 S.C. 49, 463 S.E.2d 85 (1995).
[2] 344 S.C. 426, 544 S.E.2d 838 (2001).

special relationship").   Although we acknowledge it is difficult from precedent to determine the exact facts and circumstances that create a special relationship, we find there was enough evidence presented in this case to establish a genuine issue of material fact as to this issue.

We acknowledge evidence was presented supporting TSC's argument that Travis Patrick was the Resident Construction Engineer (RCE) for the South Carolina Department of Transportation (SCDOT) and therefore Patrick had supervisory authority over the Project—not Martin Long, an engineer at TSC.   For example, although there was an Organizational Chart listing Long as the RCE, it demonstrates Long reported to Patrick.   The Standard Specifications for Highway Construction incorporated in the contract between Horry County and TSC (the TSC Contract) lists the RCE as a SCDOT official and provides that the RCE will decide all questions that arise and has the authority to suspend work or withhold payments.   The Scope of Services document, also included in the TSC Contract, states SCDOT will provide daily supervision over the project and make final decisions and the project engineer provided by TSC will report directly to the SCDOT RCE.   The Intergovernmental Agreement (the IGA) between Horry County, SCDOT, and the South Carolina Infrastructure Bank requires SCDOT to oversee all planning, design, engineering, and inspection of the Project.   And, Patrick sent two separate emails in which he signed off as "Resident Construction Engineer, SCDOT."[3]

However, in the light most favorable to Flatiron, we find sufficient evidence was presented to create an issue of fact as to the relationship between the parties, and whether, based on that relationship, TSC owed a duty to Flatiron.  *See Tommy L. Griffin*, 320 S.C. at 56, 463 S.E.2d at 89 (holding the engineer owed a duty to Griffin to not "negligently design or negligently supervise the project" where the engineer supervised the construction and had the right to inspect and stop construction).   Hutcherson's affidavit stated TSC (1) "wielded substantial influence and power over" Flatiron; (2) "often made unilateral decisions in the field (without

---

[3] We note that additional evidence was presented to the trial court in Flatiron's motion to reconsider.   For example, in a February 2016 email a Flatiron project engineer and manager stated, "You would believe that [Long], the designated RCE has actual authority; that per the [Standard] Specifications he has express authority; and the position title alone provides apparent authority; but, *in actuality he does not possess, and nor will he demonstrate, any authority* . . . ."   Additionally, Long also stated he was a consultant and the RCE would either be Patrick or Jason Thompson, SCDOT Bridge Engineer.

first consulting [Horry County] or SCDOT)"; (3) "repeatedly exercised its right to reject or stop [Flatiron]'s work"; (4) oversaw construction activities; (5) coordinated and processed pay applications; and (6) inspected and rejected work. The Scope of Services portion of the TSC Contract states TSC will provide a project manager who is responsible for the daily operation, daily supervision, and administration of the Project. Specifically, we find there was evidence to support the fact that Long acted as RCE for SCDOT and used that power to make decisions for the Project. A December 2015 email from Long to Hutcherson stated, "The SCDOT has instructed [TSC] to have Flatiron stop all work on [a contract removal project.]" Thompson, who was copied on the email, responded to Long, stating his email was correct, "but the stop work call should have been made by the RCE. This type of scenario is what [TSC was] hired for." The Organizational Chart lists Long as the RCE. Moreover, TSC acknowledged in its brief that Long's title with TSC was RCE, that TSC is a representative of the SCDOT RCE, and that TSC had authority to reject defective material and suspend work.[4]

In *Tommy L. Griffin*, our supreme court noted that the engineer not only designed the project for the county, but that it also supervised the project. *Id.* In finding that the engineer owed a duty to the contractor not to negligently design or supervise the project, the court pointed out that the engineer "had the right, among other rights, to inspect the construction and to halt construction." *Id.* The *Tommy L. Griffin* court clearly focused on the engineer's authority and interactions with the contractor, not on the parties' respective titles under their contract. In the case at hand, although SCDOT may have retained the authority to make final decisions when necessary, it appears that it delegated the everyday inspection and supervision of the Project to TSC. The TSC Contract provides that TSC was to ensure inspection for all phases of the Project and that its management duties included verification and approval of contractor pay requests. TSC also had authority to reject defective material and suspend work, which Hutcherson claims it did repeatedly. Its authority to halt work was acknowledged by SCDOT. Just like the engineer in *Tommy L. Griffin*, TSC had the right and duty to inspect and halt construction. Based on the supreme court's analysis and holding in that case,

---

[4] In its motion to reconsider, Flatiron also included an email from January 2014, in which numerous SCDOT officials were recipients, and Long stated the email was "on behalf of Horry County and SCDOT" and listed himself as "RCE." Evidence also included a memorandum on SCDOT letterhead that lists Long as the RCE. In July 2016, in an email from Long to SCDOT, he signed off as "RCE Carolina Bays." In July 2017, Long sent an email in which Patrick was copied and stated, "I am the RCE for the SCDOT over the Carolina Bays Parkway Project."

we find there is evidence establishing a genuine issue of material fact as to whether there was a special relationship between TSC and Flatiron.[5]

2.  Flatiron argues the trial court erred by dismissing its claims prematurely—before document discovery was complete and depositions had been taken. Because we reverse and remand to the trial court, we need not address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

3.  We find the issue of whether the trial court erred by making factual findings regarding agency is not preserved.  *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial [court] to be preserved for appellate review."); *Bailey v. Segars*, 346 S.C. 359, 365, 550 S.E.2d 910, 913 (Ct. App. 2001) (stating Rule 59(e), SCRCP motions "are used to preserve those [issues] that have been raised to the trial court but not ruled upon").  The trial court initially filed a Form 4 order on November 22, 2023, granting summary judgment on Flatiron's negligence claim, finding no special relationship between the Parties, and therefore, TSC did not owe a duty to Flatiron. The Form 4 order also stated a detailed order would follow.   This order does not make any findings regarding agency.    Flatiron filed its motion to reconsider in response to  the Form 4 order on December 1 and did not include any arguments on agency.  The final order, filed on December 27, included findings that TSC was an agent of Horry County.   We acknowledge that the ruling in the final order did not change the outcome of the Form 4 order.   However, Flatiron has raised an issue with the trial court's findings in the final order for the first time on appeal.   By failing to file a motion to reconsider the final order's findings of fact regarding agency or to amend its original motion to alert the trial court of the alleged error, we hold Flatiron has not preserved this issue for our review.

**REVERSED AND REMANDED.**

**MCDONALD, HEWITT, and TURNER, JJ., concur.**

---

[5] TSC argues that SCDOT did not hold them out as an agent or give them actual authority and therefore it could not have had any authority over Flatiron. However, we agree with Flatiron's argument, which essentially states the key analysis is not whether TSC wielded authority *as* SCDOT RCE; instead, it is whether TSC actually wielded authority.  Precedent also suggests that another key fact for a special relationship is the professional duty of reasonable

competence that is independent of any contract, such as the duty owed by a professional engineer. *See Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 515 (Ill. 1994) (cited in *Tommy L. Griffin*, 320 S.C. at 55, 463 S.E.2d at 89).